UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GEORGE BODE, et al.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 17-5483** |
| **KENNER CITY, et al.** | **SECTION: "G" (5)** |

## ORDER

In this litigation, Plaintiffs, who are twelve "unclassified civil service" public employees of the City of Kenner, Louisiana,[1] seek declaratory relief and an injunction barring the City of Kenner ("the City"), Mayor Ben Zahn in his official capacity ("Mayor Zahn"), and Chief of Police Michael Glaser in his official capacity ("Chief Glaser") from enforcing Kenner City Charter Article I, Section 1.06 (hereinafter, the "Charter Amendment").[2] Plaintiffs allege that the Charter Amendment, which provides that non-elected City employees "shall not participate in any political activity on behalf of any city candidate in the City of Kenner elections," violates their First Amendment rights to engage in political speech, is unconstitutionally vague, and is overbroad.[3] In the alternative, Plaintiffs allege that the Charter Amendment violates the Louisiana Constitution and Louisiana state law.[4] The City responds that the Charter Amendment is narrowly tailored to

---

[1] Rec. Doc. 1 at 3–4. In particular, Plaintiffs are: (1) George Bode, the City of Kenner's Assistant Director of Inspections and Code Enforcement; (2) Adam Campo, the City of Kenner's Clerk of Court; (3) Gerald Dillenkoffer, an employee of the City of Kenner's Public Works Department; (4) Wendi Folse, the City of Kenner's Director of Personnel; (5) Mary-Sharon Howland, the Assistant to the Mayor, Defendant Ben Zahn; (6) Kenneth Marroccoli, the City of Kenner's Director of Parks and Recreation; (7) Theresa Nevels, the City of Kenner's Director of Purchasing; (8) Stephen Petit, Jr., an Assistant City Attorney and Kenner City Prosecutor; (9) Johnie Sullivan, an employee of the City of Kenner's Recreation Department; (10) Ronald Vitellaro, the City of Kenner's Director of Fleet Management; (11) Richard Walther, the City of Kenner's Director of Inspections and Code Enforcement; and (12) Mike Wetzel, the City of Kenner's Director of Finance. *Id.*

[2] *Id.* at 1–2.

[3] *Id.* at 2.

[4] *Id.*

1

achieve the City's compelling interest in maintaining an apolitical workforce.[5] Pending before the Court is Plaintiffs' "Motion for Preliminary Injunction."[6] Having reviewed Plaintiffs' motion, the memoranda in support and in opposition and attached exhibits, the evidence presented at the hearing on the preliminary injunction, and the applicable law, for the reasons that follow, the Court will grant Plaintiffs' motion for a preliminary injunction and enjoin Defendants and their agents from enforcing Kenner City Charter Article I, Section 1.06 until there is a final judgment in this case, because prohibiting "*any* political activity" in *any* City election, by its plain language, provides no room for protected political expression. Therefore, and for the reasons that follow, Plaintiffs have established that they have a substantial likelihood of success on the merits of their claims, there is a substantial threat that failure to grant the injunction will result in irreparable injury to Plaintiffs, the threatened injury outweighs any damage that the injunction will cause to Defendants, and an injunction will not disserve the public interest.[7]

## I. Background

### A.    *Factual Background* [8]

Plaintiffs are twelve "unclassified civil servants" employed by the City of Kenner, an instrumentality of the state of Louisiana.[9] In particular, Plaintiffs are political appointees who

---

[5] Rec. Doc. 15.

[6] Rec. Doc. 4.

[7] *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011).

[8] The facts of this case are largely undisputed, as the parties filed joint stipulations of fact into the record and did not call witnesses to testify at the preliminary injunction hearing. *See* Rec. Doc. 18. The following facts, based on the evidence attached to Plaintiffs' and Defendants' memoranda and admitted at the evidentiary hearing, as well as the parties' joint stipulations of facts, constitute the Court's "findings of fact" for purposes of Federal Rule of Civil Procedure 52(a). These findings of fact are not binding on the Court at a trial on the merits. *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 268 (5th Cir. 2012).

[9] Rec. Doc. 4-1 at 1–2; Rec. Doc. 18 at 2; *see also* Rec. Doc. 1 at 3–4.

"serve at the pleasure of the Mayor" in various municipal positions, such as the Assistant to the Mayor, the City Prosecutor, and the Clerk of Court.[10] "Classified" civil servants in the City of Kenner receive certain employment protections under the Civil Service System.[11] By contrast, "unclassified" civil servants are employed at will by the Mayor.[12] Thus, newly-elected Mayors may appoint new individuals to fill those "unclassified" positions and replace the individuals selected by the previous administration.[13]

On June 7, 2012, the Kenner City Council approved Resolution No. B-16261, which called an election to amend the Kenner City Charter to include the instant Charter Amendment.[14] The Charter Amendment, titled "Apolitical Workforce," provides: "Section 1.06. The nonelected employees in the employment of the City of Kenner shall not participate in any political activity on behalf of any city candidate in City of Kenner elections."[15] Nonelected employees include both classified and unclassified employees.[16] The term "political activity" is not defined in the Charter Amendment.[17] On November 6, 2012, 70% of the participating voters of the City of Kenner voted in favor of adopting the Charter Amendment and 30% voted against it.[18] Prior to the enactment of the Charter Amendment, the Kenner City Mayor had vetoed an ordinance in October 2011 seeking

---

[10] Rec. Doc. 18 at 2; *see* Rec. Doc. 4-1 at 2; Rec. Doc. 1 at 3–4.

[11] Rec. Doc. 4-1 at 4, 14; *see also* Rec. Doc. 18 at 2; Rec. Doc. 1 at 5–6, 15–16.

[12] *See* Rec. Doc. 4-5 at 2; *see also* Rec. Doc. 4-4 at 2; Rec. Doc. 1 at 10.

[13] *See* Rec. Doc. 4-5 at 2; Rec. Doc. 4-4 at 2; Rec. Doc. 1 at 10.

[14] Rec. Doc. 18 at 3.

[15] *Id.*; *see* Rec. Doc. 1-1.

[16] Rec. Doc. 1-1.

[17] Rec. Doc. 18 at 3.

[18] *Id.*

to prohibit unclassified employees of the City of Kenner from engaging in any political activity, and a similar attempt to limit City employees' political activity also failed in 1999.[19]

Prior to the enactment of the Charter Amendment, unclassified City employees were already prohibited from engaging in political activity during regular employment hours pursuant to Section 2-90 of the Kenner Code of Ordinances.[20] Section 2-90 directly defined the term "political activities" "[f]or purposes of this section."[21] Classified City employees were subject to the specific prohibitions on political activity established by the City's Civil Service System in Section 8.04(B) of the Kenner City Charter as well.[22] Section 8.04(B) defined "political activity"

---

[19] *Id.* at 4. *See* Rec. Doc. 1 at 9.

[20] Rec. Doc. 4-3. Section 2-90 of the Kenner Code of Ordinances provides in full:

No elected official, director, supervisor, or other employee of the City of Kenner shall hire, fire, promote, refuse to promote, or take any other job action against any City of Kenner employee or job applicant because of that employee's participation, or refusal to participate, in any election or other political activities.

No elected official, director, supervisor, or other employee of the City of Kenner shall coerce or threaten any employee with any job action because of that employee's participation, or refusal to participate, in any election or other political activities.

(a) For purposes of this section, political activities include, but are not limited to, support or nonsupport of any candidate for public office, fundraising activities, support or nonsupport, of any referendum or millage or similar proposition, or participation in the activities of any political party.

(b) Provided, however, that no employee is allowed to engage in political activity while performing their job duties for the City of Kenner during regular employment hours.

[21] *id.*

[22] *See* Rec. Doc. 31. In particular, Section 8.04(B) provides:

B. Party Membership; Elections. No member of the Kenner City Civil Service Board, or employee covered under this Section shall participate or engage in political activity; be a candidate for nomination or election to public office or be a member of any national, state, or local committee of a political party or faction; make or solicit contributions for a political party, faction or candidate; or take active part in the management of the affairs of a political party, faction, candidate or any political campaign, except to exercise his right as a citizen to express his opinion privately, to serve as a commissioner or official watcher at the polls, and to cast his vote as he desires.

(1) Contributions. No person shall solicit contributions for political purposes from any classified employee or use or attempt to use his position in City service to punish or coerce the

4

"[a]s used in the Part" and lists certain political activities that classified City employees could and could not do under that prior ban.[23]

As stated in the parties' joint stipulations, although Plaintiffs have "no desire" to engage in political activity during work hours, Plaintiffs "have a genuine desire to express themselves on political issues while outside of work hours, and would like to participate in these elections while 'off the clock.'"[24] After the adoption of the Charter Amendment, Plaintiffs were prohibited from supporting local candidates in the 2016 Kenner City mayoral and City Council special election.[25] Plaintiffs will also be prevented by the Charter Amendment from supporting City candidates in the upcoming 2018 Kenner City elections.[26] Plaintiffs have expressed that they do not know which activities are prohibited by the Charter Amendment's restrictions on engaging in "political activity" and which activities are not.[27]

The City of Kenner will hold its next primary election for Mayor, Police Chief, and City Council on March 24, 2018, with the general election set for April 28, 2018.[28] Qualifying for that

---

political action of a classified employee.

    (2)  Political Activity Defined. As used in the Part, "political activity" means an effort to support or oppose the election of a candidate for political office or to support a particular political party in an election.

[23] *Id.* at 61.

[24] Rec. Doc. 18 at 2.

[25] *See* Rec. Doc. 4-4 at 2; Rec. Doc. 4-5 at 2; Rec. Doc. 4-6 at 2.

[26] *See* Rec. Doc. 4-4 at 2; Rec. Doc. 4-5 at 2; Rec. Doc. 4-6 at 2.

[27] *See* Rec. Doc. 4-4 at 1–2 (Plaintiff concurring with the facts alleged in the Plaintiffs' complaint and stating that the Charter Amendment fails to give him notice as to what activity is prohibited); Rec. Doc. 4-5 at 1–2 (same); Rec. Doc. 4-6 at 1–2 (same); *see also* Rec. Doc. 1 at 8, 10 (Plaintiffs alleging that they are fearful of retribution for violating the Charter Amendment and are unclear on what the Charter Amendment prohibits).

[28] Rec. Doc. 18 at 2.

election begins January 3, 2018.[29] To date, there are no known cases where the Charter Amendment's prohibitions have resulted in any adverse employment action in the City of Kenner.[30]

### B.   Procedural History

Plaintiffs filed a complaint in this matter on June 1, 2017.[31] On June 20, 2017, Plaintiffs filed the instant motion for a preliminary injunction.[32] On June 27, 2017, Defendant City of Kenner filed an opposition.[33] On June 29, 2017, with leave of Court, the City filed an amended opposition.[34] On June 30, 2017, with leave of Court, Plaintiffs filed a reply.[35] On June 27, 2017, Defendants Ben Zahn, the Mayor of the City of Kenner, and Michael Glaser, the Chief of Police, each filed a limited opposition to the motion for preliminary injunction and a motion to dismiss.[36]

On June 30, 2017, Plaintiffs and Defendants filed witness and exhibits lists for the hearing on the motion for a preliminary injunction set for July 5, 2017.[37] On June 30, 2017, the parties filed joint factual and evidentiary stipulations for the July 5, 2017 preliminary injunction hearing,[38] and Defendant filed objections to several exhibits identified in Plaintiffs' exhibit list.[39]

---

[29] *Id.*

[30] *Id.* at 4.

[31] Rec. Doc. 1.

[32] Rec. Doc. 4.

[33] Rec. Doc. 15.

[34] Rec. Doc. 18.

[35] Rec. Doc. 27.

[36] Rec. Docs. 11, 12, 13, 14.

[37] Rec. Docs. 21, 22, 23.

[38] Rec. Doc. 18.

[39] Rec. Doc. 24. In particular, Defendants object on relevancy grounds to the introduction of the following

## II. Parties' Arguments

### A.    *Plaintiffs' Motion for a Preliminary Injunction*

In their motion, Plaintiffs seek a preliminary injunction against the enforcement of Kenner City Charter Article I, Section 1.06 by Defendants and its agents.[40] Plaintiffs point out that they are "unclassified" political appointees who do not enjoy the same employment protections that classified City employees receive.[41] Plaintiffs state that they are appointed by the City of Kenner's Mayor and can be fired by him or her at any time, and that when a new Mayor is elected, that Mayor brings his or her own appointees to fill Plaintiffs' positions.[42]

Plaintiffs argue that a preliminary injunction is proper because they have demonstrated that all four factors required for injunctive relief are met.[43]

---

exhibits listed in Plaintiffs' exhibit list: (1) Plaintiffs' exhibit 4, *i.e.* a vetoed copy of the October 26, 2011 Kenner City Ordinance that purportedly sought to limit the political activities of classified civil servants; (2) Plaintiffs' exhibit 5, *i.e.* the Louisiana Attorney General's Opinion No. 11-256, in which the Attorney General allegedly concluded that the Kenner City Council did not have the power to pass the 2011 Kenner City Ordinance; (3) Plaintiffs' exhibit 6, *i.e.* a 1999 draft Kenner City Ordinance purportedly attempting to enact similar restrictions and an opinion by the Kenner City Attorney concluding in part that it was unconstitutional; (4) Plaintiffs' exhibit 7, *i.e.* the United States Office of Special Counsel's advisory publication regarding permissible political activity under the Hatch Act for "Less Restricted" and "Further Restricted Employees;" and (5) Plaintiffs' exhibits 8 and 9, *i.e.* the general reservation in Plaintiffs' exhibit list to introduce "any document" necessary to impeach a witness or rebut other documents. Rec. Doc. 24 at 1–2; *see* Rec. Docs. 1-3, 1-4, 1-5, 21, 27-2. The Court need not address Defendants' first three objections to Plaintiffs' exhibits 5, 6, and 7, *i.e.* the exhibits regarding past attempts by the City of Kenner to restrict the political activities of classified civil servants, as the Court does not rely on this evidence in considering Plaintiffs' motion for a preliminary injunction. Moreover, the Court need not address Defendants' general objection to Plaintiffs' exhibits 8 and 9, *i.e.* Plaintiffs' reservation of the right to introduce impeachment or rebuttal evidence, as Plaintiffs did not introduce any such evidence at the preliminary injunction hearing. However, as explained *infra*, the Court overrules Defendants' objection to Plaintiffs' exhibit 7, as the Court finds that the restrictions imposed by the Hatch Act are relevant to arguments made by both parties comparing the Charter Amendment to the Hatch Act.

[40] Rec. Doc. 4-1 at 3.

[41] *Id.* at 2.

[42] *Id.* at 4.

[43] *Id.* at 5. In particular, Plaintiffs contend that they are entitled to injunctive relief because they can demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) the threatened injury outweighs any harm that will result if the injunction is granted; and (4) that the injunction will not disserve the public interest.

1.      **Substantial Likelihood of Success**

Plaintiffs assert that they can show a substantial likelihood of success on their claims that the Charter Amendment is: (1) a regulation on political speech that cannot survive strict scrutiny; (2) unconstitutionally vague; (3) overbroad; (4) a prior restraint; and, in the alternative, (5) a violation of Louisiana law.[44]

i.      ***Regulation on political speech***

First, Plaintiffs argue that the Charter Amendment discriminates based on the content of the speech, *i.e.* political speech, and therefore must survive strict scrutiny, *i.e.* that a compelling government interest exists and that the least restrictive means was used to serve that interest.[45] Plaintiffs assert that the Charter Amendment fails both prongs of the strict scrutiny test.[46]

a.      **Compelling interest**

Plaintiffs contend that there is no compelling government interest for the Charter Amendment's expansive regulations of unclassified City employees' political speech outside work hours.[47] For example, Plaintiffs assert that there is no compelling interest to prevent Plaintiffs from placing bumper stickers on a vehicle, putting up yard signs on their personal property, or telling their friends that they are voting for a certain candidate.[48]

---

[44] *Id.* at 6–13.

[45] *Id.* at 6–7.

[46] *Id.*

[47] *Id.* at 7.

[48] *Id.*

8

### b.        Narrowly tailored

Additionally, Plaintiffs argue that the Charter Amendment is not narrowly tailored to suit any possible compelling interest.[49] Plaintiffs point out that the Charter Amendment attempts to ban *all* political expression related to City of Kenner elections in any amount, group, hour, or place.[50] Plaintiffs assert that it is "obvious" that there are many less restrictive measures to accomplish possible goals such as free and fair elections.[51] For example, Plaintiffs aver that the City could simply enforce Section 2-90 of the Code of Ordinances, which already prohibits public employees from engaging in political activity during work hours.[52] Plaintiffs also contend that the City could enact less restrictive measures such as those utilized by the federal Hatch Act, *e.g.*, prohibiting employees from specific actions such as appearing on a host list for fundraisers or from participating in the management of political campaigns.[53] According to Plaintiffs, the federal Hatch Act allows employees to donate and canvass for candidates, whereas the Charter Amendment does not.[54] Plaintiffs argue that a complete ban on all "political activity" in City elections cannot be narrowly tailored, as it leaves no other outlet for political expression.[55]

Plaintiffs represent that in *Wachsman v. City of Dallas*, the Fifth Circuit upheld a Dallas statute that prohibited civil service employees from engaging in political activity, but only after the city affirmatively interpreted the statute to not prohibit endorsements of candidates to groups

---

[49] *Id.* at 8.

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] *Id.* at 8–9.

[55] *Id.* at 10.

of fifteen or fewer people, placing yard signs or bumper stickers on their property, or political activity by spouses of the employees.[56] Plaintiffs assert that the Fifth Circuit in *Wachsman* opined that Dallas's policy "leaves unregulated a considerable scope of city employee political activity."[57]

   *ii.*  ***Unconstitutionally vague***

   Second, Plaintiffs argue that the Charter Amendment is void for vagueness, as its prohibitions are not clearly defined and people of common intelligence would differ as to its application and meaning.[58] Plaintiffs aver that the Charter Amendment does not define what the term "political activity" covers or when "city elections" begin.[59] Plaintiffs assert that the statute does not provide "fair notice" as to what it prohibits and thus has a capacity to chill constitutionally protected conduct.[60] Plaintiffs argue that the "unfettered discretion" given to Defendants to apply the Charter Amendment also creates a "danger of arbitrary and discriminatory enforcement."[61]

   For example, Plaintiffs point out that Plaintiff Petit has a window sticker on his vehicle supporting current-Kenner City Councilman Dominick Impastato's bid for a seat on the Jefferson Parish Council.[62] Plaintiffs aver that while this sticker does not outwardly appear to violate the prohibition on "political activity" in "city elections," it raises the question of whether and when Petit would be in violation of the Charter Amendment if Dominick Impastato instead seeks to be

---

[56] *Id.* at 9 (citing *Wachsman v. City of Dallas*, 704 F.2d 160, 163 n.3 (5th Cir. 1983)).

[57] *Id.* (citing *Wachsman*, 704 F.2d at 175).

[58] *Id.* at 10 (quoting *Shamloo v. Mississippi State Bd. Of Trustees of Institutions of Higher Learning*, 620 F.2d 516, 523 (5th Cir. 1980)).

[59] *Id.*

[60] *Id.* at 10–11.

[61] *Id.* at 11.

[62] *Id.* (citing Rec. Doc. 4-4 at 2).

re-elected as a councilmember in the City of Kenner.[63] Likewise, Plaintiffs contend that Plaintiff Howland is an officer and board member of two local business and civic organizations.[64] However, Plaintiffs argue that if those associations invite mayoral candidates to speak, it is unclear if the Charter Amendment prohibits Howland from attending the event or clapping during the speech.[65] Additionally, Plaintiffs argue that the Charter Amendment is vague as to whether it applies to more attenuated political activity, such as whether an employee's family members can place bumper stickers on family cars, or whether the employee can support petition drives or recalls.[66]

### iii.    Overbroad

Third, Plaintiffs contend that the Charter Amendment is overbroad "both substantively and as applied," as it prohibits a substantial amount of protected speech.[67] According to Plaintiffs, the Charter Amendment has no "legitimate sweep," as Plaintiffs contend there is "no basis" for the City to enforce content-based regulations on all political activity related to City elections.[68] Plaintiffs aver that the employees' spouses, children, and roommates are chilled from expressing themselves via yard signs, bumper stickers, and campaign contributions.[69]

---

[63] *Id.*

[64] *Id.*

[65] *Id.*

[66] *Id.*

[67] *Id.* at 11–12.

[68] *Id.* at 12.

[69] *Id.*

### iv.    Prior restraint

Fourth, Plaintiffs argue that the Charter Amendment is a "prior restraint" in that it expressly prohibits all political activity.[70] Plaintiffs aver that prior restraints, such as permitting requirements for political marches, cannot be based on the content of the message conveyed.[71] Plaintiffs contend that because the Charter Amendment is a content-based prior restraint, it is unconstitutional.[72]

### v.    Louisiana law

Fifth, in the alternative to Plaintiffs' arguments under the United States Constitution, Plaintiffs assert that the Charter Amendment is invalid because it violates the Louisiana Constitution and Louisiana law.[73] According to Plaintiffs, Article I, Section 7 of the Louisiana Constitution states that "no law shall curtail or restrain freedom of speech or of the press," and Article I, Section 9 ensures the "right of any person to assemble peaceably or to petition government for a redress of grievances."[74] Likewise, Plaintiffs contend that Article X of the Louisiana Constitution establishes a civil service system and directly prohibits classified civil servants from engaging in political activity in exchange for providing them with employment protections.[75] However, Plaintiffs argue that the civil service system established by the Louisiana Constitution was intended to allow unclassified employees to engage in political activity.[76]

---

[70] *Id.* at 13.

[71] *Id.*

[72] *Id.*

[73] *Id.*; Rec. Doc. 1 at 15–16.

[74] Rec. Doc. 4-1 at 13.

[75] *Id.* at 14.

[76] *Id.*

Additionally, Plaintiffs point out that in 1999, the City Attorney for Kenner published an opinion finding that a similar ordinance was "flawed" and unconstitutional in light of the Louisiana Constitution's established civil service system.[77] According to Plaintiffs, the City Attorney also noted that the 1999 ordinance violated Louisiana Revised Statute § 23:961, which prohibits imposing political restrictions on employees.[78]

### 2.    Irreparable Harm

Next, Plaintiffs contend that they will suffer irreparable harm if the preliminary injunction is not granted, as Plaintiffs aver that the Supreme Court has determined that the loss of their First Amendment freedoms "for even minimal periods of time" constitutes irreparable injury.[79] Accordingly, Plaintiffs argue there is "no question" that the irreparable harm prong is met.[80]

### 3.    Injury Outweighs the Harm

Plaintiffs further assert that the potential for injury to Plaintiffs' rights if injunctive relief is not granted "far outweighs" any harm if a preliminary injunction is granted.[81] Plaintiffs aver that the City has no interest in enforcing an unconstitutional law that deprives Plaintiffs of their First Amendment rights.[82] Plaintiffs also point out that the Charter Amendment was only passed in 2012, and the City of Kenner "survived from 1855 to 2012" without it.[83]

---

[77] *Id.* at 3.

[78] *Id.*

[79] *Id.* (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981)).

[80] *Id.*

[81] *Id.* at 15.

[82] *Id.* (quoting *Deerfield Med. Ctr.*, 661 F.2d at 338; *Lionhart v. Foster*, 100 F. Supp. 2d 383, 392 (E.D. La. 1999)).

[83] *Id.*

### 4.        Public Interest

Finally, Plaintiffs argue that granting a preliminary injunction here will serve, rather than hurt, the public interest, as it will protect Louisiana citizens' rights to freedom of speech and provide Plaintiffs with the basic protections of due process before conclusively restricting their rights to engage in political activity.[84]

**B.        *Defendant Mayor Zahn's Response to the Motion for Preliminary Injunction***

In response, Defendant Mayor Ben Zahn points out that Plaintiffs have brought this action against him in his official capacity, which is "simply another way of alleging municipal liability."[85] Accordingly, Mayor Zahn argues that, because Plaintiffs have also asserted their claims against the City of Kenner, he has filed a separate motion to dismiss.[86] Mayor Zahn "takes no position" on the Charter Amendment's constitutionality, as he states that he respects both the will of the City's citizens in wanting an apolitical city workforce and the rights of the City's employees.[87]

**C.        *Defendant Chief Glaser's Response to the Motion for Preliminary Injunction***

In response, Defendant Chief Michael Glaser asserts that he has filed a motion to dismiss the claims against him in his official capacity, as the Chief of Police does not have the authority to enforce the Charter Amendment.[88] Rather, Chief Glaser contends that the remedy for violating the Charter Amendment is suspension or termination of employment, instead of any criminal

---

[84] *Id.*

[85] Rec. Doc. 13 at 1 (citing *Brandon v. Holt*, 469 U.S. 464, 469 (1985); *Howell v. Town of Ball*, 2012 WL 3962387, *4 (W.D. La. 2012)).

[86] *Id.* at 2 (citations omitted).

[87] *Id.* at 2–3.

[88] Rec. Doc. 14 at 1.

penalties, and Plaintiffs are not employees of the Department of Police.[89] Chief Glaser further states that he "takes no position" regarding the constitutionality of the Charter Amendment, and he also respects both the will of the City of Kenner's citizens in passing the Charter Amendment and the rights of the City's employees to engage in free speech.[90]

### D.    The City's Arguments in Opposition to the Motion for a Preliminary Injunction

In opposition, the City of Kenner argues that Plaintiffs' motion for a preliminary injunction should be denied.[91] First, the City contends that the Louisiana Department of Justice's opinion on a prior ordinance, which was similar to the Charter Amendment, only provided that the Kenner City Council lacked the authority to pass such an ordinance.[92] Here, however, the City asserts that the provision at issue is a Charter amendment, and not an ordinance.[93]

Likewise, the City points out that Article X of the Louisiana Constitution makes clear that the state civil service system referenced by Plaintiffs only applies to cities with a population of over 400,000, whereas the City of Kenner has a population of about 67,000.[94] Thus, the City argues that Article X, Section 15 applies here, which provides that nothing in Article X prevents municipalities with population of less than 400,000 from establishing their own municipal civil service system.[95] Additionally, the City avers that the Charter Amendment will not be enforced

---

[89] *Id.*

[90] *Id.* at 1–2.

[91] Rec. Doc. 15 at 1.

[92] *Id.* at 2.

[93] *Id.*

[94] *Id.*

[95] *Id.*

against non-city employees who live in a residence with a City employee, as the plain language of the Charter Amendment applies only to the City's employees.[96]

Next, the City argues that Plaintiffs' motion should be denied, as they have not shown that they satisfy each of the four requirements for a preliminary injunction.[97]

### 1.    Substantial Likelihood of Success

First, the City asserts that there is no likelihood that Plaintiffs will prevail on the merits, as Plaintiffs ignore the "extensive and indisputable Supreme Court and Fifth Circuit case law" upholding laws restricting public employees' political activities as constitutional.[98] For example, the City represents that the Supreme Court has upheld a state statute that prohibits public employees from engaging in any political activity other than privately expressing their opinions or voting.[99] Likewise, the City avers that the Supreme Court has determined that it is not unconstitutional to prevent federal employees from holding a party office, actively participating in fundraising, becoming a partisan candidate, actively managing a campaign, circulating partisan nominating petitions, or serving as a delegate at a party convention.[100]

Moreover, the City argues that there is a long historical tradition of limiting political activities of public employees.[101] According to the City, the Supreme Court has noted that in 1801 Thomas Jefferson directed the heads of his executive departments to not attempt to influence the

---

[96] *Id.* at 3.

[97] *Id.*

[98] *Id.* at 5.

[99] *Id.* (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 606 (1973); *Phillips v. City of Dallas*, 781 F.3d 772, 782 (5th Cir. 2015)).

[100] *Id.* at 6 (citing *United States Civil Service Comm'n v. Nat'l Ass'n of Letter Carriers AFL-CIO*, 413 U.S. 548 (1973)).

[101] *Id.* at 6.

votes of others or take part in electioneering.[102] Similarly, the City notes that President Theodore Roosevelt issued an Executive Order in 1907 to prohibit federal employees from using their "official authority or influence" to interfere with an election.[103] The City avers that Congress subsequently enacted the Hatch Act, which prohibits any federal employee from using his or her "official authority or influence for the purpose of interfering with an election or affecting the result thereof," or from taking "any active part in political management or in political campaigns."[104]

According to the City, the Supreme Court has identified four government interests that support restricting the political rights of public employees: (1) ensuring public employees administer the law without political bias or favoritism; (2) avoiding the appearance of political bias or favoritism; (3) preventing the government work force from being employed in support of a "powerful, invincible, and perhaps corrupt political machine;" and (4) protecting government employees from being pressured to engage in political acts to "curry favor with their superiors" or to advance depending on their political performance.[105]

Here, the City argues that the Charter Amendment is a valid restriction on political activities by the City's employees on behalf of City candidates in City of Kenner elections, which the City contends is narrowly tailored to fulfill the compelling interest of avoiding the politicization of its public employees.[106] The City avers that the term "political activity" is not

---

[102] *Id.* (quoting *Letter Carriers*, 413 U.S. at 556; 10 J. Richardson, Messages and Papers of Presidents, at 98–99).

[103] *Id.* at 7 (quoting *Letter Carriers*, 413 U.S. at 556; Twenty-Fourth Annual Report of the Civil Service Commission, House Doc. No. 600, 60th Cong., 1st Sess., at 104).

[104] *Id.* at 7–8.

[105] *Id.* at 8–9 (citing *Letter Carriers*, 413 U.S. at 556; *Phillips*, 781 F.3d at 776–77; *Wachsman v. City of Dallas*, 704 F.2d 160, 166–67 (5th Cir. 1983)).

[106] *Id.* at 12.

vague, as the Kenner Code of Ordinances § 2-90(a) provides that "political activities include, but are not limited to, support or nonsupport of any candidate for public office, fundraising activities, support or nonsupport, of any referendum or millage or similar proposition, or participation in the activities of any political party."[107] According to the City, the Hatch Act also defines "political activities" as "an activity directed toward the success or failure of a political party, candidate for partisan political office, or partisan political group."[108] Similarly, the City asserts that the Louisiana Constitution defines "political activity" as "an effort to support or oppose the election of a candidate for political office or to support a particular political party in an election."[109]

Additionally, the City contends that the Charter Amendment is narrowly tailored.[110] First, the City avers that the Charter Amendment does not prevent Plaintiffs from supporting candidates in elections that do not involve a city candidate.[111] Thus, the City argues that the Charter Amendment is narrowly tailored to serve the City of Kenner's compelling interests in maintaining the loyalty, efficiency, and nonpartisanship of its employees.[112] The City asserts that it is clear that Plaintiff Petit would not be prohibited from supporting a candidate for Jefferson Parish Council by the Charter Amendment, as it does not involve a city candidate in a city election.[113] Second, the City argues that the Charter Amendment does not prohibit Plaintiffs from engaging in political activity on other issues such as "non-partisan charter amendments, bond issues, referendum, or

---

[107] *Id.* at 13.

[108] *Id.*

[109] *Id.* at 13–14.

[110] *Id.*

[111] *Id.* at 14.

[112] *Id.* at 15.

[113] *Id.* at 16.

other ballot measures."[114] By contrast, the City contends that Plaintiffs want to engage in the very partisan political activity that the Hatch Act and other cities have tried to prevent, *e.g.*, "to keep the employee from being involved in the politics that elect his boss."[115]

### 2.    Irreparable Harm

Second, the City argues that Plaintiffs have not shown that they will suffer irreparable harm here.[116] The City points out that the next primary for the upcoming city candidate election is scheduled for March 24, 2018, and the general election is scheduled for April 28, 2018.[117] Thus, the City contends that there is enough time to adjudicate Plaintiffs' request for declaratory relief without a preliminary injunction.[118]

### 3.    Injury Outweighs the Harm

According to the City, Plaintiffs face no injury here, because a long line of Supreme Court and Fifth Circuit case law confirms that the Charter Amendment is constitutional.[119] By contrast, the City argues that the threatened harm to the City if the preliminary injunction is granted is great, as it has an interest in preventing City employees from taking part in partisan local political activities and enforcing the will of the voters.[120]

---

[114] *Id.* at 14, 16.

[115] *Id.* at 17–18 (quoting *Villejo v. City of San Antonio*, 485 F. Supp. 2d 777 (W.D. Tex. 2007)).

[116] *Id.* at 18.

[117] Rec. Doc. 29 at 1 (amendment to the City of Kenner's memorandum in opposition to the motion for preliminary injunction).

[118] *Id.* at 2.

[119] Rec. Doc. 15 at 19.

[120] *Id.* at 20.

### 4.    Public Interest

Finally, the City contends that granting the preliminary injunction will disserve the public interest, as the majority of the participating voters in Kenner approved the Charter Amendment "based on their vested interest in independent and efficient government employees."[121]

### E.    *Plaintiffs' Arguments in Further Support of the Motion for a Preliminary Injunction*

In reply, Plaintiffs argue that the City is attempting to retroactively narrow the vague term of "political activity" by citing to definitions not found in the Kenner City Charter.[122] Plaintiffs assert that, unlike the cases cited by the City, the Charter Amendment includes no definitions of its terms and does not specifically define a list of political activities that are prohibited or permitted, such as privately expressing an opinion.[123] Moreover, Plaintiffs aver that while the City now argues that it does not seek to enforce the Charter Amendment against non-city employees who live with Plaintiffs, the Charter Amendment effectively chills those persons' speech for fear that it could be attributed to the City employee.[124] Plaintiffs further contend that while the next municipal primary is on March 24, 2018, the qualifying date is January 3, 2018, and a person's "political activity" in support of a candidate for an upcoming election does not begin on a set date.[125]

Plaintiffs argue that there are less restrictive means available in this case, such as the more narrow means approved of by the Fifth Circuit in *Wachsman v. City of Dallas*.[126] There, Plaintiffs

---

[121] *Id.*

[122] Rec. Doc. 27 at 1–2.

[123] *Id.* at 2, 7–8.

[124] *Id.*

[125] *Id.* at 3.

[126] *Id.* at 4.

aver that public employees could endorse candidates in front of groups of fewer than fifteen people, place campaign yard signs and bumper stickers, and work for candidates.[127] Likewise, Plaintiffs argue that because the Hatch Act imposes less restrictions on federal employees than the Charter Amendment and is designed to protect the same compelling interests, it is clear that there are less restrictive means available to the City.[128]

**F.    Defendants' Oral Argument in Further Opposition to the Motion for a Preliminary Injunction**

In addition to the arguments made in its memorandum, at the preliminary injunction hearing the City also pointed out that Section 8.04(B)(2) of the Kenner City Charter states that, "[a]s used in the Part," political activity is defined as "an effort to support or oppose the election of a candidate for political office or to support a particular political party in an election."[129] The City further argued that a person of ordinary intelligence would understand that "political activity" meant that the Charter Amendment prohibited "active campaigning."[130] Additionally, the City asserted that the Charter Amendment does not prevent voting in City elections, participating in private political conversations with spouses, or informing others who the Plaintiff will be voting for during a City election, as long as the City employee is not "actively campaigning."[131] Finally,

---

[127] *Id.* at 5.

[128] *Id.* at 5–6.

[129] Prelim. Inj. Tr., July 5, 2017, at 17:5–17:23.

[130] *Id.* at 30:18–30:23 (the City arguing that "again, if I'm actively campaigning, then, no, you can't [stand up and say, 'I'm voting for Tommy.']. If I'm not actively campaigning, then I'm not within the definition of 'political activity'"); *id.* at 32:14–32:17 ("I think a person of ordinary understanding can say, 'I can't actively campaign for someone. I can't actively do it.'").

[131] *Id.* at 28:9–28:16 (the City representing that, "as an example," the Charter Amendment allows employees to cast votes and express their personal opinions to a spouse); *Id.* at 30:18–30:23 (the City arguing that "again, if I'm actively campaigning, then, no, you can't [stand up and say, 'I'm voting for Tommy.']. If I'm not actively campaigning, then I'm not within the definition of 'political activity'").

the City agreed that depriving a City employee of the right to vote "definitely crosses the line,"[132] and that the strict scrutiny test should be applied here.[133]

### G. Plaintiffs' Oral Argument in Further Support of the Motion for a Preliminary Injunction

In addition to the arguments made in their memoranda, Plaintiffs contended at the preliminary injunction hearing that the definition of "political activity" found in Section 8.04(B)(2) of the Kenner City Charter does not apply to the Charter Amendment.[134] In particular, Plaintiffs pointed out that Section 8.04(B)(2) explicitly states that it only applies to that Part, and thus it does not apply to the Charter Amendment in Article I, Section 1.06 of the Kenner City Charter.[135] Plaintiffs argued that if the City wanted to use that definition for the term "political activity" in the Charter Amendment, then "they could have very easily added a qualifier [to the Charter Amendment] that says, 'As defined in Section 8 of the City Charter.'"[136]

### III. Law and Analysis

### A. Legal Standard on a Motion for a Preliminary Injunction

Federal Rule of Civil Procedure Rule 65 governs injunctions and restraining orders, and Rule 65(a) sets forth the procedural rules governing the issuance of a preliminary injunction. Under Rule 65(a)(1), a court may issue a preliminary injunction only on notice to the adverse party. To prevail on a motion for a preliminary injunction, the plaintiff must establish the following essential

---

[132] *Id.* at 22:5–22:24.

[133] *Id.* at 4:12–4:18 (the City confirming that it is "correct" that "there isn't a dispute that this is an attempt to regulate political speech and that strict scrutiny applies").

[134] *Id.* at 58:1–58:6.

[135] *Id.*

[136] *Id.*

elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that failure to grant the injunction will result in irreparable injury; (3) the threatened injury outweighs any damage that the injunction will cause to the adverse party; and (4) the injunction will not do disservice to the public interest.[137] Because such relief is an "extraordinary and drastic remedy,"[138] to justify entry of a preliminary injunction, the petitioner must "clearly carr[y] the burden of persuasion on all four elements."[139] If a plaintiff fails to carry its burden as to any one of these factors, injunctive relief cannot be granted.[140]

Whether to grant or to deny a preliminary injunction is within the discretion of the trial court,[141] but "[t]he decision to grant a preliminary injunction is to be treated as the exception rather than the rule."[142] Regardless of whether the request for injunctive relief is granted or denied, Federal Rule of Civil Procedure 52(a) requires the Court to "state the findings of fact and conclusions of law that support its action."[143]

## B.    *Analysis*

In their motion, Plaintiffs argue that a preliminary injunction against the enforcement of the Charter Amendment is proper.[144] The Charter Amendment provides that the "nonelected employees in the employment of the City of Kenner shall not participate in any political activity

---

[137] *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011).

[138] *Munaf v. Geren*, 553 U.S. 674, 689 (2008).

[139] *PCI Transp., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005) (internal quotation marks and citations omitted).

[140] *See Enterprise Int'l Inc. v. Corp. Estatal Petrolera Ecautoriana*, 762 F.2d 464, 472 (5th Cir. 1985).

[141] *Apple Barrel Prods., Inc. v. Beard*, 730 F.2d 384, 386 (5th Cir. 1984).

[142] *Miss. Power & Light*, 760 F.2d at 621.

[143] Fed. R. Civ. P. 52(a)(1), (2).

[144] Rec. Doc. 4-1 at 5.

on behalf of any city candidate in City of Kenner elections."[145] To prevail on their motion for a preliminary injunction, Plaintiffs must establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat that failure to grant the injunction will result in irreparable injury; (3) the threatened injury outweighs any damage that the injunction will cause to the City; and (4) the injunction will not do disservice to the public interest.[146]

### 1.    Substantial Likelihood of Success

Plaintiffs assert that they have a substantial likelihood of success in showing that the Charter Amendment violates the First and Fourteenth Amendments of the United States Constitution, as they contend the Charter Amendment is: (1) a regulation on political speech that cannot survive strict scrutiny; (2) unconstitutionally vague; (3) overbroad; and (4) a prior restraint.[147] Plaintiffs further contend in the alternative that the Charter Amendment violates the Louisiana Constitution and Louisiana law.[148] Because the parties' arguments on Plaintiffs' claims under the First and Fourteenth Amendments are so related, the Court will consider each of Plaintiffs' constitutional claims in turn.

### i.    *Regulation on political speech*

First, Plaintiffs argue that the Charter Amendment is a content-based restriction that is subject to, and fails, strict scrutiny.[149] Plaintiffs contend that there is no compelling government interest for the Charter Amendment's regulations of the City's employees' political speech outside

---

[145] Rec. Doc. 1-1.

[146] *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011).

[147] Rec. Doc. 4-1 at 6–13.

[148] *Id.*

[149] *Id.* at 6.

work hours and, regardless, the Charter Amendment is not narrowly tailored to suit a compelling interest.[150]

### a.    Standard of judicial review

The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws "abridging the freedom of speech."[151] As a preliminary matter, the Court must first determine which standard of judicial review to apply.

Plaintiffs and the City agree that the strict scrutiny test should be applied here.[152] If strict scrutiny applies, the City must show that the Charter Amendment is "narrowly tailored" to serve a "compelling interest."[153] The Supreme Court and the Fifth Circuit have instructed that regulations on speech that are "content-based," *i.e.* where the government targets speech "based on its communicative content," is subject to strict scrutiny, whereas regulations that are "content-neutral" must only survive intermediate scrutiny.[154] Similarly, the Supreme Court has held that regulations limiting political expression are subject to strict scrutiny.[155] For example, in *Elrod v.*

---

[150] *Id.* at 7.

[151] U.S. Const. amend. I.

[152] Prelim. Inj. Tr., July 5, 2017, at 4:12–4:18 (the City confirming that it is "correct" that "there isn't a dispute that this is an attempt to regulate political speech and that strict scrutiny applies"); *see also* Rec. Doc. 4 (Plaintiffs arguing that strict scrutiny applies); Rec. Doc. 15 (the City responding that the Charter Amendment survives strict scrutiny).

[153] *Reed*, 135 S. Ct. at 2228.

[154] *Fantasy Ranch, Inc. v. City of Arlington*, 459 F.3d 546, 554 (5th Cir. 2006); *see R.A.V. v. St. Paul*, 505 U.S. 377, 395 (1992); *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 115, 118 (1991); *Texas v. Johnson*, 491 U.S. 397 (1989).

[155] *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 345–46 (1995); *Meyer v. Grant*, 486 U.S. 414, 420 (1988); *Buckley v. Valeo*, 424 U.S. 1, 45 (1976); *see also Republican Party of Minnesota v. White*, 536 U.S. 765 (2002) (concluding that the Minnesota Supreme Court's canon of judicial conduct, which prohibited candidates for judicial election from announcing their views on legal or political views, did not survive strict scrutiny); *Dep't of Texas, Veterans of Foreign Wars of U.S. v. Texas Lottery Comm'n*, 760 F.3d 427 (5th Cir. 2014) (holding that strict scrutiny applied to a facial challenge to a Texas law prohibiting charities from using bingo proceeds for lobbying and other political speech); *Fort v. Civil Serv. Comm'n of Alameda Cty.*, 61 Cal. 2d 331, 333 (1964) (applying strict scrutiny to a county charter provision that prohibited public employees from taking part in a political campaign or an

*Burns*, a case involving public employees' First Amendment rights, the Supreme Court opined that it is "firmly established that a significant impairment of First Amendment rights must survive exacting scrutiny."[156]

Here, the Charter Amendment bans speech "on the basis of its content and burdens a category of speech that is 'at the core of our First Amendment freedoms,'" *i.e.* political speech.[157] The Charter Amendment applies to City employees' political activities both during and after work hours, and it imposes a blanket ban on "any political activity on behalf of a city candidate," without limitation or exceptions.[158] Thus, the Charter Amendment appears to be a content-based regulation on Plaintiffs' political speech, *i.e.* a category of speech that is "at the core of our First Amendment freedoms," and a "significant impairment of First Amendment rights" warranting the application of the strict scrutiny test.[159]

Although the parties agree that strict scrutiny applies, the Court notes that the Supreme Court has recognized that government entities "may impose restraints on the job-related speech of public employees that would be plainly unconstitutional if applied to the public at large."[160] Thus,

---

election except to vote or privately express an opinion, and cited approvingly by the Fifth Circuit in *Hobbs v. Thompson*, 448 F.2d 456 (5th Cir. 1971)).

[156] 427 U.S. 347, 362 (1976).

[157] *See Siefert v. Alexander*, 608 F.3d 974, 981 (7th Cir. 2010) (quoting *White*, 536 U.S. at 774) (applying strict scrutiny to ban on judges affiliating with political parties, endorsing candidates, or soliciting campaign contributions).

[158] Rec. Doc. 1-1.

[159] *See Elrod*, 427 U.S. at 363 ("In short, if conditioning the retention of public employment on the employee's support of the in-party is to survive constitutional challenge, it must further some vital government end by a means that is least restrictive of freedom of belief and association in achieving that end, and the benefit gained must outweigh the loss of constitutionally protected rights."); *Siefert*, 608 F.3d at 981; *see also White*, 536 U.S. at 765 (applying strict scrutiny to canon of judicial conduct that prohibits candidates for judicial office from announcing their views on disputed legal or political issues).

[160] *United States v. Nat'l Treasury Employees Union*, 513 U.S. 454, 465–66 (1995).

26

there is a body of related, but distinguishable, case law in the Supreme Court and Fifth Circuit where a public employee's challenge to his or her termination or to a regulation prohibiting certain "non-speech" political activity on First Amendment grounds was reviewed by balancing the interests of the government against the rights of the employee.[161] Moreover, in *Morial v. Judiciary Commission*, the Fifth Circuit noted that the level of judicial review that is to be applied in cases involving the First Amendment rights of public employees differs on a case-by-case basis: "As the burden comes closer to impairing core first amendment values, *e.g.* the right to hold particular political views, or impairs some given first amendment value more substantially, the requisite closeness of fit of means and end increases accordingly."[162]

Here, Plaintiffs do not challenge a termination or a limited regulation on "non-speech" political activity.[163] Rather, Plaintiffs challenge the Charter Amendment's blanket prohibition against "any political activity on behalf of any city candidate in the City of Kenner elections."[164] Indeed, in *Hobbs v. Thompson*, the Fifth Circuit concluded that "where the political activities of a public employee are unrelated to the performance of his duties he is to be treated for purposes of adjudicating his First Amendment rights as a 'member of the general public.'"[165] Therefore, in

---

[161] *See Phillips v. City of Dallas*, 781 F.3d 772, 776 (5th Cir. 2015) (employing the balancing test to consider a First Amendment challenge by a terminated public employee to Dallas's restriction on public employees running for office; *Morial v. Judiciary Comm'n*, 565 F.2d 295, 300 (5th Cir. 1977) (en banc) (citations omitted) (determining that when a restriction on public employees' partisan political activity "contains substantial non-speech elements," the challenged regulation is constitutionality permissible "if justified by a reasonable necessity to burden those activities to achieve a compelling public objective").

[162] *Morial*, 565 F.2d at 299–300.

[163] *Id.*

[164] *See* Rec. Doc. 1-1.

[165] *Hobbs v. Thompson*, 448 F.2d 456, 475 (5th Cir. 1971) (citing *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cty., Illinois*, 391 U.S. 563, 572 (1968)).

light of the fact that the Charter Amendment operates as a "significant impairment" on Plaintiffs' core speech rights, regardless of the time and place or whether it is job-related, and the parties' agreement that the Charter Amendment's content-based prohibition on Plaintiffs' political speech is subject to strict scrutiny, the Court will apply the strict scrutiny test here.[166]

Accordingly, the Court will next consider whether: (1) the City has a "compelling interest" in enacting restrictions on Plaintiffs' political speech; and (2) whether the Charter Amendment is "narrowly tailored" to accomplish that compelling interest, *i.e.* whether there are less restrictive means available to the City to achieve its goals.[167]

### b.    Compelling state interest

In their motion, Plaintiffs argue that there is no compelling government interest for the Charter Amendment's regulations of City employees' political speech outside work hours.[168] In opposition, the City asserts that the Supreme Court has noted a number of compelling interests for limiting the political activities of public employees.[169] Here, the City argues that the Charter

---

[166] Even if the Court were to apply the standard used in challenges by public employees to terminations and "non-speech" regulations and consider whether the Charter Amendment was a "reasonable necessity" to achieve a "compelling public objective," for the same reasons stated below, the Court finds that Plaintiffs have nevertheless shown a substantial likelihood of success on their First Amendment claims. That is, as the Court discusses *infra*, the City has not pointed to a sufficient basis to establish that it was a "reasonable necessity" to adopt the Charter Amendment's broad prohibitions on Plaintiffs' political activities with regard to City elections. Nor has the City shown that the balance between the significant infringement on Plaintiffs' core First Amendment rights and the City's interests would not favor Plaintiffs. While governmental entities can impose restraints on the job-related speech of public employees, public employees "do not automatically relinquish their rights under the First Amendment by accepting government employment." *Sanjour v. E.P.A.*, 56 F.3d 85, 90 (D.C. Cir. 1995).

[167] *Reed*, 135 S. Ct. at 2228.

[168] Rec. Doc. 4-1 at 7.

[169] Rec. Doc. 15 at 6, 8–9 (citations omitted).

Amendment was passed to avoid the politicization of its public employees and to maintain the loyalty, efficiency, and nonpartisanship of its employees.[170]

The Supreme Court has concluded that a "narrow class of speech restrictions" based upon "an interest in allowing governmental entities to perform their functions" does not run afoul of the First Amendment.[171] The Supreme Court has opined that "actively partisan governmental personnel threatens good administration . . . ."[172] Indeed, in *United States Civil Service Commission v. National Association of Letter Carriers, AFL-CIO*, the Supreme Court pointed to a number of interests the government has in restricting certain political activities of its public employees, such as ensuring that the government operates effectively and fairly, that laws are executed without political bias or favoritism or the appearance of improper politicization, and that "public employees themselves are insulated from improper political influences."[173]

Based on the foregoing, the Court finds that the City has identified several compelling state interests that justify certain restrictions on the political activity of its "unclassified" civil servants. In particular, the Court finds that the City has a compelling interest in ensuring its laws and programs are executed apolitically and without political bias or favoritism.[174] Likewise, the City has a compelling interest in maintaining the loyalty, efficiency, and nonpartisanship of its public

---

[170] *Id.* at 12, 15.

[171] *See Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 341 (2010); *see also Asgeirsson v. Abbott*, 773 F. Supp. 2d 684, 700–01 (W.D. Tex. 2011), *aff'd*, 696 F.3d 454 (5th Cir. 2012).

[172] *United Pub. Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 97 (1947).

[173] 413 U.S. 548, 564 (1973).

[174] *Nat'l Ass'n of Letter Carriers, AFL-CIO*, 413 U.S. at 564–65.

employees and preventing them from "being involved in the politics that elect [their] boss" to avoid any improper influences.[175]

While Plaintiffs assert that the City lacks a compelling interest in prohibiting political activity after work hours, the Court finds such argument unpersuasive. In *United Public Workers v. Mitchell*, the Supreme Court rejected the plaintiffs' argument that political activities in their free time cannot be regulated, as "[t]he influence of political activity by government employees, if evil in its effects on the service, the employees or people dealing with them, is hardly less so because that activity takes place after hours."[176] Thus, the Court finds that the City's compelling interests also exist for restricting certain political activities by the City's employees outside of work hours.

### c. Narrowly tailored

Having determined that compelling interests exist, the Court must now consider whether the Charter Amendment is narrowly tailored to accomplish those compelling interests, *i.e.* that there are no less restrictive means that would be "at least as effective" in achieving the Charter Amendment's purpose.[177] It is well established that the starting point in interpreting any statute or law is the text itself.[178] In their motion, Plaintiffs argue that the Charter Amendment is expansive, as it restricts "any political activity" without defining the term "political activity" or providing a

---

[175] *Id.* at 17–18 (quoting *Villejo v. City of San Antonio*, 485 F. Supp. 2d 777 (W.D. Tex. 2007)).

[176] *United Pub. Workers v. Mitchell*, 330 U.S. 75, 95 (1947).

[177] *Serv. Employees Int'l Union, Local 5 v. City of Houston*, 595 F.3d 588, 596 (5th Cir. 2010).

[178] *Asadi v. G.E. Energy (USA), L.L.C.*, 720 F.3d 620, 622 (5th Cir. 2013) ("If the statutory text is unambiguous, our inquiry begins and ends with the text."); *M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 2007-2371 (La. 7/1/08); 998 So. 2d 16, 27 ("The starting point in the interpretation of any statute is the language of the statute itself."); *see also BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004) ("The preeminent canon of statutory interpretation requires us to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.'" (citations omitted)).

clear list of easily identifiable political activities that are and are not prohibited.[179] Plaintiffs also assert that there are a number of less restrictive alternative measures that the City could adopt to accomplish its compelling interests.[180] In opposition, the City argues that the Charter Amendment is narrowly tailored, as it does not prevent Plaintiffs from becoming politically active in elections that do not involve City candidates.[181] In its opposition memorandum, the City also argues that the term "political activity" is not vague, and is defined in the Kenner Code of Ordinances,[182] the Louisiana Constitution,[183] and the Hatch Act.[184] At the preliminary injunction hearing, the City further pointed out that the Kenner City Charter § 8.04(B)(2) provides that "[a]s used in the Part, 'political activity' means an effort to support or oppose the election of a candidate for political office or to support a particular political party in an election,"[185] and that an ordinary person would know the term "political activity" meant "actively campaigning."[186]

---

[179] Rec. Doc. 4-1 at 8; Rec. Doc. 27 at 7–8.

[180] Rec. Doc. 4-1 at 8.

[181] Rec. Doc. 15 at 14, 16.

[182] *Id.* at 13 (quoting Kenner Code of Ordinances § 2-90(a)). In particular, the City represents that Section 2-90(a) of the Kenner Code of Ordinances provides that "political activities include, but are not limited to, support or nonsupport of any candidate for public office, fundraising activities, support or nonsupport, of any referendum or millage or similar proposition, or participation in the activities of any political party." *Id.*

[183] *Id.* at 13–14 (quoting La. Const. art. X, § 9(C)). In particular, the City contends that the Louisiana Constitution defines "political activity" as "an effort to support or oppose the election of a candidate for political office or to support a particular political party in an election." *Id.*

[184] *Id.* at 13 (quoting 5 C.F.R. § 734.101). In particular, the City represents that the Hatch Act defines "political activity" as "an activity directed toward the success or failure of a political party, candidate for partisan political office, or partisan political group." *Id.*

[185] Prelim. Inj. Tr., July 5, 2017, at 17:5–17:23; *see* Rec. Doc. 31 at 61.

[186] *Id.* at 30:18–30:23 (the City arguing that "again, if I'm actively campaigning, then, no, you can't [stand up and say, 'I'm voting for Tommy.']. If I'm not actively campaigning, then I'm not within the definition of 'political activity'"); *id.* at 32:14–32:17 ("I think a person of ordinary understanding can say, 'I can't actively campaign for someone. I can't actively do it.'").

The Court concludes that Plaintiffs have sufficiently shown that the Charter Amendment is not narrowly tailored to serve the City's compelling interests, and therefore fails to survive strict scrutiny. As noted *supra*, the starting point in interpreting any statute or law is the text itself.[187] The Charter Amendment at issue here provides that nonelected City employees such as Plaintiffs are prohibited from participating in "*any* political activity on behalf of any city candidate in the City of Kenner elections."[188] No definition of "political activity" is provided in the Charter Amendment that might limit the scope of the restricted conduct. Nor does the Charter Amendment set out a specific list of conduct that is prohibited and not prohibited such that the broad sweep of covered political expression may be narrowed, unlike the other provisions restricting public employees' political activity in the cases cited by the City.[189]

Such a broad, limitless ban appears to extend to a wide range of political conduct that is either unrelated to the City's compelling interests or so attenuated that the City could achieve its compelling interests by adopting less restrictive means. For example, "any political activity on behalf of any city candidate in the City of Kenner elections" appears to extend to a private conversation regarding a Plaintiff's support or non-support of a city candidate, regardless of where it occurs or whether it is between a Plaintiff and a single individual, a small group, or a large audience. Likewise, it appears to also prohibit Plaintiffs from attending informational forums or private events involving a city candidate, driving another family member's vehicle with a city

---

[187] *Asadi*, 720 F.3d at 622; *M.J. Farms, Ltd.*, 998 So. 2d at 27; *see also BedRoc Ltd.*, 541 U.S. at 183.

[188] Rec. Doc. 1-1 at 2 (emphasis added).

[189] *See Wachsman v. City of Dallas*, 704 F.2d 160, 175 (5th Cir. 1983); *Letter Carriers*, 413 U.S. at 556; *Phillips*, 781 F.3d at 776–77.

candidate's bumper sticker on it, or posting, liking, or sharing social media posts or general news articles on social media related to a city candidate in any undefined way or circumstance.

The City argues that the Charter Amendment is narrowly tailored because it is limited to City elections involving City candidates.[190] Thus, according to the City, Plaintiffs are not prohibited from engaging in political activity during parish, state, or federal elections or from becoming involved in other public issues, such as non-partisan charter amendments, referendums, or other ballot measures.[191] Although participating in elections other than those involving City candidates in City elections may be excluded from the ban, it does not remedy the complete ban on Plaintiffs' participation in such elections involving the City. This Court knows of no authority, nor has the City pointed to any, which allows a total ban on political speech directed to a particular type of election.

The Court notes that, at the preliminary injunction hearing, the City argued that the Charter Amendment does not prevent voting in City elections, participating in private political conversations with spouses, or informing others who the Plaintiff will be voting for during a City election.[192] However, the City's argument is undercut by the text of the Charter Amendment itself, which offers no such limitations on its extensive reach. Instead, the term "any political activity" means precisely what it says: all political activity involving City candidates, in any manner or circumstance, is prohibited. By contrast, the City has not adequately explained how the plain text

---

[190] Rec. Doc. 15 at 14.

[191] *Id.* at 14–17.

[192] *See, e.g.*, Prelim. Inj. Tr., July 5, 2017, at 28:9–28:16 (the City representing that, "as an example," the Charter Amendment allows employees to cast votes and express their personal opinions to a spouse).

of the Charter Amendment can be interpreted such that it does not include the act of voting or simply stating who one is voting for in a City election.

The Court notes that the City pointed to multiple definitions of the term "political activity" in its opposition memorandum and during the preliminary injunction hearing to argue that the Charter Amendment is tailored to the City's compelling interests.[193] However, rather than demonstrating that the Charter Amendment is narrowly tailored, the City's shifting stance on what "political activity" means, and thus what political conduct is covered by the Charter Amendment, undercuts the City's argument on the Charter Amendment's constitutionality. For example, the City represents in its opposition memorandum that Section 2-90(a) of the Kenner Code of Ordinances provides that "political activities include, *but are not limited to*, support or nonsupport of any candidate for public office, *fundraising activities*, *support or nonsupport of any referendum or millage or similar proposition*, or participation in the activities of any political party." However, Section 2-90(a) of the Kenner Code of Ordinances does not identify in what way its non-exhaustive list *is* limited such that, if the definition applied, it would be narrowly tailored here.

Moreover, at the preliminary injunction hearing, the City proposed two new and vastly different definitions of "political activity" that would greatly impact the range of political expression covered. First, the City pointed to Section 8.04 of the Kenner City Charter, which states that, "[a]s used in the Part," political activity is "an effort to support or oppose the election of a candidate for political office or to support a particular political party in an election."[194] Second, the City argued that a person of ordinary intelligence would know that "political activity" meant the Charter Amendment prohibited "active campaigning" and excluded private conversations with

---

[193] *See* Rec. Doc. 15 at 13–14.

[194] Prelim. Inj. Tr., July 5, 2017, at 17:5–17:23; *see* Rec. Doc. 31 at 61.

spouses and voting in City elections.[195] Yet, the City could not explain clearly what "actively" campaigning meant, or how this definition is derived from the plain text of the Charter Amendment.

The fundamental flaw with the City's approach of offering no less than five different definitions of "political activity" lies in the fact that the Charter Amendment adopts none of them. The Charter Amendment fails to incorporate by reference any of these definitions or provide its own definition for what conduct is covered by the term "political activity." For example, the City represents that the Kenner City Charter includes its own definition of "political activity;" however, that definition, contained in Section 8.04(B)(2) of the Kenner City Charter, explicitly states that it only applies to that Part and the restrictions on "political activity" in Section 8.04(B),[196] and the City has not demonstrated that it applies to the Charter Amendment in Section 1.06 of the Kenner City Charter. As such, rather than show that there are no less restrictive means available to achieve the Charter Amendment's purpose,[197] the City's reliance on multiple definitions of "political activity" supports the finding that Plaintiffs have a substantial likelihood of showing that less restrictive means exist. Each definition appears to impose different levels of restrictions on Plaintiffs' political expression, and none seem to apply to the Charter Amendment's *limitless* ban.

---

[195] *See, e.g.*, Prelim. Inj. Tr., July 5, 2017, at 30:18–30:23 (the City arguing that "again, if I'm actively campaigning, then, no, you can't [stand up and say, 'I'm voting for Tommy.']. If I'm not actively campaigning, then I'm not within the definition of 'political activity'"); *id.* at 32:14–32:17 ("I think a person of ordinary understanding can say, 'I can't actively campaign for someone. I can't actively do it.'").

[196] *See* Kenner City Charter § 8.04(B)(2) ("As used in the Part, 'political activity' means an effort to support or oppose the election of a candidate for political office or to support a particular political party in an election."); Rec. Doc. 31 at 61.

[197] *Serv. Employees Int'l Union, Local 5*, 595 F.3d at 596.

35

Finally, the City cites to cases that upheld various restrictions on the political activities of government employees in support of its contention that the Charter Amendment is constitutional.[198] However, the limitations on public employees' political expression imposed in those cases are clearly distinguishable from the Charter Amendment at issue here, as they either: (1) provide a list of specific political activities that are prohibited, such as running for office, actively participating in political campaigns, using official positions to influence an election, or making campaign donations; or (2) include a list of political activity that is explicitly not prohibited, such as voting in elections or engaging in private political discussions.[199] Indeed, in *Wachsman v. City of Dallas*, the Fifth Circuit upheld certain restrictions on city employees' political activity where the ban left "unregulated a considerable scope of city employee political activity," and "city employees [were] limited only to an extent that furthers their ability to perform optimally."[200]   The Charter Amendment, by contrast, clearly extends to *all* political activity, regardless of its connection to the City's compelling interests or Plaintiffs' employment with the City. Indeed, contrary to the City's assertion that the Charter Amendment is narrowly tailored, it appears that there was little tailoring involved in drafting the Charter Amendment's blanket prohibition on "any political activity" with regard to City elections.[201]

---

[198] Rec. Doc. 15 at 6–11.

[199] For example, the federal Hatch Act imposes far more limited and specific prohibitions against federal employees taking "any active part in political management or in political campaigns" or using their "official authority or influence for the purpose of interfering with or affecting the result of an election." *See Mitchell*, 330 U.S. at 94–95; *Nat'l Ass'n of Letter Carriers, AFL-CIO*, 413 U.S. at 550. *See also Wachsman v. City of Dallas*, 704 F.2d 160, 162 (5th Cir. 1983) (upholding more limited restrictions on the political speech of government workers, particularly after the city had "authoritatively reinterpreted" the provision so that it did *not* prohibit such conduct as endorsing a candidate to groups of fifteen or fewer people, placing signs or bumper stickers on personal property, and working in campaign headquarters).

[200] *Id.* at 174.

[201] *See generally Hobbs v. Thompson*, 448 F.2d 456, 470–71 (5th Cir. 1971) (holding that "a blanket prohibition upon political activity, not precisely confined to remedy specific evils, would deal a serious blow to the

36

Based on the foregoing, the Court finds that Plaintiffs have a substantial likelihood of success in showing that the Charter Amendment cannot survive strict scrutiny.[202] Plaintiffs have sufficiently shown that there are less restrictive means available to the City that would "be at least as effective in achieving" the City's compelling interests.[203] Accordingly, the Court finds that Plaintiffs have shown that there is a substantial likelihood of success on the merits of their first claim that the Charter Amendment is a violation of their free speech rights under the First Amendment, and is therefore unconstitutional.

### ii.    *Unconstitutionally Vague*

Next, Plaintiffs assert that the Charter Amendment is unconstitutionally vague under the First and Fourteenth Amendments, as the Charter Amendment's prohibitions are not clearly defined and people of common intelligence would differ as to its application and meaning.[204] In response, the City asserts that the Charter Amendment is not impermissibly vague, as it clearly restricts political activities on behalf of City candidates in City of Kenner elections.[205] Moreover, as discussed *supra*, the City argues that the term "political activity" is not vague, as it is defined

---

effective functioning of our democracy").

[202] As noted *supra*, all parties agree that the Charter Amendment's blanket prohibition on Plaintiffs' political activity with regard to City elections is subject to strict scrutiny. However, the Court additionally finds that, even if a less close fit between the City's means and ends was required, *e.g.*, that there was a "reasonable necessity to burden those activities to achieve a compelling public objective," Plaintiffs have still shown a substantial likelihood of success on their First Amendment claims here for the same reasons discussed. *Morial*, 565 F.2d at 299–300. In other words, the City has not shown that there was a "reasonable necessity" to prohibit all of Plaintiffs' political activity on behalf of City candidates in City elections, without limitation or exception, and that the balance here between the Plaintiffs' rights to engaged in the prohibited political speech and the City's interests favors the Plaintiffs. *See Letter Carriers*, 413 U.S. at 556; *Morial*, 565 F.2d at 299–300.

[203] *Serv. Employees Int'l Union, Local 5 v. City of Houston*, 595 F.3d 588, 596–97 (5th Cir. 2010).

[204] Rec. Doc. 4-1 at 10 (quoting *Shamloo v. Mississippi State Bd. of Trustees of Institutions of Higher Learning*, 620 F.2d 16 (5th Cir. 1980)).

[205] Rec. Doc. 15 at 12.

in the Kenner City Charter, Kenner City Code of Ordinances, the Louisiana Constitution, and the Hatch Act, and that a person of ordinary intelligence would know that the term "political activity" only applied to "actively campaigning" and would not include casting votes or privately discussing who one may be voting for.[206]

A law or policy is void for vagueness if it "either forbids or requires the doing of an act in terms so vague that people of common intelligence must necessarily guess at its meaning and differ as to its application."[207] The Fifth Circuit has held that, because the First Amendment needs "breathing space," laws regulating speech "must be drawn with some specificity."[208] The government must ensure prohibitions are "clearly defined" and should "articulate its aims with a reasonable degree of clarity."[209] While a law may be written to be flexible, it must provide "fair notice" so that "its prohibitions may be avoided by those who wish to do so."[210] According to the Fifth Circuit, the purpose of the vagueness doctrine is to prevent the government "from chilling substantial amounts of speech and facilitating discriminatory and arbitrary enforcement."[211] That is, the vagueness doctrine addresses laws where citizens cannot predict which actions are prohibited and where "discriminatory and arbitrary enforcement" is possible.[212] Thus, to succeed

---

[206] *Id.* at 13–14. *See* Prelim. Inj. Tr., July 5, 2017, at 30:18–30:23, 32:14–32:17.

[207] *Connally v. Gen. Const. Co.*, 269 U.S. 385, 391 (1926); *see also Roberts v. U.S. Jaycees*, 468 U.S. 609, 629 (1984) (applying the same test); *Allen v. Bartholomew Cty. Court Servs. Dep't*, 185 F. Supp. 3d 1075, 1080–81 (S.D. Ind. 2016) (applying the same void for vagueness test in a First Amendment challenge to a policy prohibiting court employees from engaging in political activity).

[208] *Serv. Employees Int'l Union, Local 5*, 595 F.3d at 596 (citing *Howard Gault Co. v. Tex. Rural Legal Aid, Inc.*, 848 F.2d 544, 559 (5th Cir. 1988)).

[209] *Roberts*, 468 U.S. at 629; *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

[210] *Id.* at 596–97 (citing *Grayned v. City of Rockford*, 408 U.S. 104, 110–12 (1972)).

[211] *Asgeirsson v. Abbott*, 696 F.3d 454, 466 (5th Cir. 2012).

[212] *Id.*

38

on their vagueness challenge, Plaintiffs must show that the Charter Amendment: (1) reaches a substantial amount of constitutionally protected conduct; and (2) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or "authorizes or even encourages arbitrary and discriminatory enforcement."[213]

In *Hobbs v. Thompson*, the Fifth Circuit held that a provision in a city charter that prohibited fire department employees from taking an active part in any election, contributing money to any candidate, or "prominently identifying themselves in a political race with or against any candidate for office" was unconstitutionally vague.[214] The Fifth Circuit noted that it was unclear where the regulation stopped or if it prohibited displaying bumper stickers, discussing candidates with friends, or writing letters to newspapers in support of candidates.[215] The Fifth Circuit further concluded that it was "simply inconceivable to us that one acting in good faith under this regulatory scheme would readily know what conduct was prohibited and what conduct was permitted," and therefore the provision would likely chill the plaintiffs' speech.[216]

The Charter Amendment plainly reaches a "substantial amount of constitutionally protected conduct," *e.g.*, Plaintiffs' political speech.[217] Moreover, as explained *supra*, the Charter Amendment fails to define what conduct or speech constitutes "political activity," rendering it both unconstitutionally vague and overly broad. Unlike the regulations on public employees' political

---

[213] *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 761 (5th Cir. 2010); *see United States v. Clark*, 582 F.3d 607, 612 (5th Cir. 2009).

[214] 448 F.2d 456, 471 (5th Cir. 1971).

[215] *Id.*

[216] *Id.*

[217] *See Clark*, 582 F.3d at 612; *see also Allen*, 185 F. Supp. 3d at 1080–81 (finding that a policy prohibiting *all* political activity by public employees clearly reaches a "substantial amount of constitutionality protected conduct").

activities upheld by the Supreme Court and the Fifth Circuit,[218] the Charter Amendment does not

"clearly define" its terms or explicitly identify what speech or conduct is allegedly included or

excluded in its broad ban.[219] The City's identification of five different definitions of the term

"political activity" exacerbates rather than remedies the vagueness of the law, as the scope of

prohibited activity under the Charter Amendment appears to vary depending on the particular

definition considered. Moreover, the Charter Amendment does not incorporate any of the City's

definitions, leaving Plaintiffs to guess which definition may apply and creating a serious risk of

"discriminatory and arbitrary enforcement" depending on the definition adopted by a given

enforcer. [220]  If the City itself cannot point to a definitive authority to interpret and define the

boundaries of the Charter Amendment's intrusions into Plaintiffs' political speech and activity,

then it appears to also be true that "[people] of common intelligence must necessarily guess at its

meaning."[221]

As such, Plaintiffs have sufficiently shown that the Charter Amendment risks chilling

substantial amounts of their protected speech.[222] For example, Plaintiffs point out that the Charter

Amendment is vague as to whether a City employee can attend her private civic organization's

meetings when a mayoral candidate is invited to speak,[223] or how a spouses' private political

---

[218] *See Letter Carriers*, 413 U.S. at 556; *Wachsman v. City of Dallas*, 704 F.2d 160, 162 (5th Cir. 1983).

[219] *Roberts*, 468 U.S. at 629; *Grayned*, 408 U.S. at 108.

[220] *Asgeirsson*, 696 F.3d at 466.

[221] *Connally v. Gen. Const. Co.*, 269 U.S. 385, 391 (1926).

[222] *See, e.g.*, Rec. Doc. 4-1 at 11 (Plaintiff Mary-Sharon Howland, who is an officer in several private civic organizations, asserting that it is unclear what the Charter Amendment would prohibit her from doing if a mayoral candidate attended or spoke at one of those organizations' meetings, *e.g.*, it is unclear if she would be precluded from attending the meeting with mayoral candidates or clapping during a candidate's speech).

[223] *See* Rec. Doc. 4-1 at 11 (asserting that it is unclear if Plaintiff Howland would be precluded from attending a meeting for her civic organization when mayoral candidates are speaking or whether she may clap during a

activity in a shared home can be distinguished from the City employee.[224] Indeed, the fact that the City argues that the Charter Amendment excludes voting in elections and private political conversations from its prohibitions on *any* political activity, an exclusion that is not found anywhere in the text of the Charter Amendment, exacerbates the ambiguity as to what conduct is now prohibited. The chilling effect of the Charter Amendment and the possibility of arbitrary enforcement of its provisions are further increased by the fact that Plaintiffs are unclassified civil servants who lack the same job protections that classified civil servants receive.[225]

Therefore, based on the foregoing, the Court concludes that Plaintiffs have sufficiently shown that the Charter Amendment's wide prohibitions and undefined terms are so vague that people of common intelligence must necessarily guess at its meaning and differ as to its application.[226] Accordingly, the Court finds that Plaintiffs have shown a substantial likelihood of success on their claim that the Charter Amendment is unconstitutionally vague.

---

candidate's speech); Rec. Doc. 4-5 at 1–2.

[224] *See* Rec. Doc. 4-1 at 12 (Plaintiffs arguing that the Charter Amendment is vague as to whether its prohibitions would apply if a City employee drives a family car with a political bumper sticker on it placed by a family member or if a spouse made a campaign contribution to a City candidate); Rec. Doc. 4-4 at 2 (Plaintiff Stephen Petit stating in his Declaration that he features a window sticker on his vehicle supporting a current Kenner City Councilman in an upcoming election for Jefferson Parish Council). Moreover, at the preliminary injunction hearing, the City also could not clarify whether the Charter Amendment prohibits a Plaintiff from attending a fundraiser for a City candidate hosted by his or her spouse in their private home, or at what point a private conversation about City candidates between a Plaintiff and a single individual or small group would cross the line from permissible to impermissible under the Charter Amendment. *See* Prelim. Inj. Tr., July 5, 2017, at 30:4–30:23 (the Court asking if an employee could tell stand up at a spouse's dinner party and tell others who he or she is voting for, and the City responding that it depends on whether the person is "actively campaigning" at the dinner party or not).

[225] *See* Rec. Doc. 4-5 at 2; *see also* Rec. Doc. 4-4 at 2; Rec. Doc. 1 at 10.

[226] *Connally v. Gen. Const. Co.*, 269 U.S. 385, 391 (1926); *see also Roberts v. U.S. Jaycees*, 468 U.S. 609, 629 (1984) (applying the same test); *Allen v. Bartholomew Cty. Court Servs. Dep't*, 185 F. Supp. 3d 1075, 1080–81 (S.D. Ind. 2016) (applying the same void for vagueness test in a First Amendment challenge to a policy prohibiting court employees from engaging in political activity).

### iii.    Overbroad

Plaintiffs also contend that the Charter Amendment is overbroad.[227] Plaintiffs argue that it has no "legitimate sweep," as there is no basis for the City to enforce content-based regulations on all political activity related to City elections.[228] In opposition, the City asserts that the Charter Amendment is a valid restriction on public employees' political speech, but the City does not directly address Plaintiffs' overbroad arguments.[229]

As the Fifth Circuit has noted, for a law to be overbroad, it must "reach[ ] a substantial amount of constitutionally protected conduct."[230] According to the Fifth Circuit, a government's legitimate purpose to validly control or prevent some expressive conduct cannot be accomplished "by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms."[231] "Facial overbreadth scrutiny emphasizes the need to eliminate an overbroad law's deterrent impact on constitutionally protected expressive activity."[232]

In *Hobbs v. Thompson*, the Fifth Circuit held that a city charter provision prohibiting fire department employees from taking an active part in any election, contributing money to any candidate, or "prominently identifying themselves in a political race with or against any candidate for office" was overbroad.[233] The Fifth Circuit determined that the city's prohibitions "sweep too

---

[227] Rec. Doc. 4-1 at 11–12.

[228] *Id.* at 12.

[229] Rec. Doc. 15.

[230] *Asgeirsson*, 696 F.3d at 464–65.

[231] *Hobbs v. Thompson*, 448 F.2d 456, 459–60 (5th Cir. 1971); *see also Serv. Employees Int'l Union, Local 5 v. City of Houston*, 595 F.3d 588, 598 (5th Cir. 2010).

[232] *Hobbs*, 448 F.2d at 459–60.

[233] *Id.* at 474.

broadly and proscribe a great deal of political activity which is unrelated to the effective workings

of the fire department" or the "proper performance of its firemen's employment duties."[234] The

Fifth Circuit opined that the "very fact that the scheme has been construed to forbid political

bumper stickers—a particularly innocuous form of political activity—points out clearly the

broadside nature of the Macon prohibitory regulations."[235] The Fifth Circuit in *Hobbs* further cited

approvingly to the California Supreme Court's decision in *Fort v. Civil Service Commission of*

*Alameda County*, where the court invalidated a county charter provision that prohibited public

employees from taking part in a political campaign or an election except to vote or privately

express an opinion.[236] The California Supreme Court in *Fort* concluded that the First Amendment

does not permit "wholesale restrictions on political activities merely because the persons affected

are public employees," and because the county charter provision "encompassed both valid and

invalid restrictions on free speech," it was overbroad.[237]

The Court finds that Plaintiffs have shown that there is a substantial likelihood of success

on their claim that the Charter Amendment is unconstitutionally overbroad. The Charter

Amendment plainly reaches a "substantial amount of constitutionally protected conduct," *e.g.*,

Plaintiffs' political speech.[238] While the City points out that limited restrictions on public

---

[234] *Id.* at 471.

[235] *Id.*

[236] *Id.* (citing *Fort v. Civil Serv. Comm'n of Alameda Cty.*, 61 Cal. 2d 331, 333 (1964)). The Fifth Circuit further noted with approval the holdings of state courts in *City of Miami v. Sterbenz* and *De Stefano v. Wilson* enjoining overbroad restrictions on public employees' political rights. *Id.* (citing *City of Miami v. Sterbenz*, 203 So. 2d 4, 5 (Fla. 1967); *De Stefano v. Wilson*, 96 N.J. Super. 592, 597, 233 A.2d 682, 685 (Law. Div. 1967)).

[237] *Fort*, 61 Cal. 2d at 338–39.

[238] *See Clark*, 582 F.3d at 612; *see also Allen*, 185 F. Supp. 3d at 1080–81 (finding that a policy prohibiting *all* political activity by public employees clearly reaches a "substantial amount of constitutionality protected conduct").

employees' political activities have been upheld in other cases, the Charter Amendment "sweep[s] too broadly" by going well beyond targeted restrictions on political activities and including a substantial amount of protected political expression that is either unrelated to or attenuated from the City's goals and the Plaintiffs' employment duties.[239] Indeed, unlike the laws challenged in *Hobbs* and *Fort*, the Charter Amendment fails to even exclude voting or privately expressing an opinion from its overbroad reach. Accordingly, the Court finds that Plaintiffs have demonstrated a substantial likelihood of success on their claim that the Charter Amendment is unconstitutionally overbroad.

### iv.    *Prior Restraint*

Finally, Plaintiffs argue that the Charter Amendment is an unconstitutional "prior restraint" in that it "is based on the content of the message conveyed."[240] The City does not directly respond to Plaintiffs' argument regarding prior restraint.[241]

The prior restraint doctrine typically refers to administrative and judicial orders "forbidding certain communications when issued in advance of the time that such communications are to occur."[242] However, First Amendment case law typically distinguishes prior restraints from laws that impose penalties on expression after it occurs.[243] In *Serafine v. Branaman*, the Fifth Circuit considered whether the Psychologists' Licensing Act, which prohibited a political candidate from

---

[239] *Hobbs*, 448 F.2d at 460, 471 (holding that even if "the interests a statute promotes may justify some infringement upon First Amendment rights, the overbreadth doctrine condemns those means to that legitimate end which comprehend too broad an incursion upon the realm of First Amendment activity").

[240] Rec. Doc. 4-1 at 13.

[241] Rec. Doc. 15.

[242] *Alexander v. United States*, 509 U.S. 544, 550 (1993) (quoting M. Nimmer, *Nimmer on Freedom of Speech* § 4.03, 4–14 (1984)) (quotation marks omitted).

[243] 2 Smolla & Nimmer on Freedom of Speech § 15:1.

describing herself as a "psychologist" on her website, was an unconstitutional prior restraint.[244] The Fifth Circuit held that it was not, as there is a "clear distinction, solidly grounded in our cases, between prior restraints and subsequent punishments" penalizing past speech.[245] "Prior restraints typically involve administrative and judicial orders [such as temporary restraining orders and permanent injunctions] forbidding certain communications when issued in advance of the time that such communications are to occur[,] or, in other words, laws which require a speaker to obtain prior approval for any expressive activities."[246]

Here, it is unclear how Plaintiffs' prior restraint claim applies to the Charter Amendment. The Charter Amendment does not impose a "permitting scheme" that controls the "time, place, and manner of speech" or require the speaker to "obtain prior approval for any expressive activities."[247] Nor does the Charter Amendment appear to be the equivalent of an administrative or judicial order "forbidding certain communications when issued in advance of the time that such communications are to occur."[248] That is, Plaintiffs have not shown that the Charter Amendment is a "prior restraint" as opposed to a "subsequent punishment[]" that "penalize[es] past speech."[249]

Accordingly, the Court cannot find at this time that Plaintiffs have shown a substantial likelihood of success on their prior restraint claim under the First Amendment. Regardless, because

---

[244] 810 F.3d 354, 370 (5th Cir. 2016).

[245] *Id.* (quoting *Gibson v. Tex. Dep't of Ins.*, 700 F.3d 227, 235 (5th Cir. 2012) (quotation marks omitted); *see also Gibson v. Texas Dep't of Ins. Div. of Workers' Comp.*, 700 F.3d 227, 235 (5th Cir. 2012) (determining that a law requiring organizations to register with the state before accepting political contributions in excess of $500 was not a prior restraint).

[246] *Gibson*, 700 F.3d at 235.

[247] *Nationalist Movement*, 505 U.S. at 126; *Gibson*, 700 F.3d at 235.

[248] *Alexander v. United States*, 509 U.S. 544, 550 (1993) (quoting M. Nimmer, *Nimmer on Freedom of Speech* § 4.03, 4–14 (1984)) (quotation marks omitted).

[249] *Gibson*, 700 F.3d at 235.

Plaintiffs have sufficiently shown a substantial likelihood of success on their other constitutional claims, *i.e.* that the Charter Amendment is a violation of their First Amendment rights, vague, and overbroad, Plaintiffs have met the first prong of the preliminary injunction analysis.[250]

### 2. Irreparable Harm

Next, Plaintiffs contend that they will suffer irreparable harm if the preliminary injunction is not granted, as Plaintiffs aver that the Supreme Court has determined that the loss of their First Amendment freedoms "for even minimal periods of time" constitutes irreparable injury.[251] In opposition, the City argues that Plaintiffs have not shown that they will suffer irreparable harm if the injunction is not granted, as the next City primary election is almost nine months away.[252]

The Supreme Court has opined that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."[253] In *Opulent Life Church v. City of Holly Springs, Mississippi*, the Fifth Circuit determined that a church challenging a ban on using a public courthouse square had satisfied the irreparable harm requirement because it had alleged violations of its First Amendment rights.[254]

Here, Plaintiffs have alleged that the Charter Amendment precludes the exercise of their First Amendment freedoms and chills their protected speech.[255] Plaintiffs have also alleged that they had previously participated in the local political process prior to the enactment of the Charter

---

[250] Because the Court finds that Plaintiffs have demonstrated a substantial likelihood of success on their constitutional claims, the Court need not address Plaintiffs' alternative state law claims.

[251] *Id.* at 14–15 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981)).

[252] *Id.* at 18.

[253] *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

[254] 697 F.3d 279, 295 (5th Cir. 2012).

[255] Rec. Doc. 1 at 13.

46

Amendment, were prevented from doing so again in the 2016 Special Election, and cannot participate in the upcoming 2018 Kenner City Elections due to the Charter Amendment unless a preliminary injunction is granted.[256] Moreover, the next primary election for City of Kenner candidates is set for March 24, 2018, and there appears to be a substantial threat to Plaintiffs that this case will not be resolved in sufficient time for Plaintiffs to meaningfully participate in the 2018 Kenner City Elections if a preliminary injunction is not issued. Based on the foregoing, the Court concludes that Plaintiffs have met their burden in establishing that there is a substantial threat that failure to grant the injunction will result in irreparable injury.[257]

### 3.    Threatened Injury Outweighs the Harm

Next, Plaintiffs assert that the potential for injury to Plaintiffs' rights if injunctive relief is not granted "far outweighs" any harm if a preliminary injunction is granted.[258] Plaintiffs aver that the City has no interest in enforcing an unconstitutional Charter provision, and that it is clear that the injuries associated with a loss of First Amendment freedoms justifies granting a preliminary injunction.[259] In opposition, the City argues that Plaintiffs face no injury here, as it contends that the Charter Amendment is constitutional.[260] The City also contends that the threatened harm to it if the injunction is granted is great, as it has an interest in preventing City employees from taking part in partisan local political activities and enforcing the will of its voters.[261]

---

[256] *See* Rec. Docs. 4-4,4-5,4-6.

[257] *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011).

[258] Rec. Doc. 4-1 at 15.

[259] *Id.* (quoting *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981); *Lionhart v. Foster*, 100 F. Supp. 2d 383, 392 (E.D. La. 1999)).

[260] Rec. Doc. 15 at 19.

[261] *Id.* at 20.

In *Opulent Life Church*, the Fifth Circuit noted that, after concluding that the plaintiff's harm to its religious liberties rights under the First Amendment was irreparable, the defendant "would need to present powerful evidence of harm to its interests to prevent [the plaintiff] from meeting this requirement."[262] Here, as described *supra*, Plaintiffs have shown that there is a substantial threat of irreparable injury if a preliminary injunction is not granted, as they will continue to be deprived of their right to freedom of expression. By contrast, the City has not shown that there is sufficient harm to its interests to justify denying Plaintiffs' motion for a preliminary injunction. Accordingly, the Court concludes that Plaintiffs have met their burden in establishing that the threatened injury outweighs any damage that the injunction will cause to the City.[263]

### 4.    Public Interest

Finally, Plaintiffs contend that granting a preliminary injunction here will serve the public interest, as it will protect their rights as citizens to engage in free speech while the parties conclusively determine whether the Charter Amendment is constitutional.[264] In opposition, the City contends that the majority of participating voters in Kenner approved the Charter Amendment "based on their vested interest in independent and efficient government employees," and therefore granting the preliminary injunction will disserve the public interest.[265]

In *Opulent Life Church*, the Fifth Circuit held that "injunctions protecting First Amendment freedoms are always in the public interest."[266] Here, Plaintiffs have made a strong showing that

---

[262] 697 F.3d at 297 (ultimately remanding the case to the district court to allow the defendant to put on evidence as to the third prong, as the district court had denied the motion for a preliminary injunction on the second prong).

[263] *Janvey*, 647 F.3d at 595.

[264] Rec. Doc. 4-1 at 15.

[265] Rec. Doc. 15 at 20.

[266] 697 F.3d at 298. *See also Ingebretsen v. Jackson Public School District*, 88 F.3d 274, 280 (5th Cir. 1996)

their rights under the First and Fourteenth Amendments are violated by the broad prohibitions in the Charter Amendment. Accordingly, the Court finds that granting a preliminary injunction here will not do disservice to the public interest.[267]

## C.    Amount of Security

Pursuant to Federal Rule of Civil Procedure 65(c), "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."[268] However, the Fifth Circuit has recognized that the amount of security required pursuant to Rule 65(c) is a matter of discretion of the trial court, and a court "may elect to require no security at all."[269] Neither Plaintiff nor Defendants have addressed the issue of security.

Plaintiffs are City employees seeking to enjoin the enforcement of the Charter Amendment and its prohibition against Plaintiffs engaging in "any political activity on behalf of city candidates in City of Kenner elections."  Defendants have neither requested security in the event that this Court grants a preliminary injunction, nor have they presented any evidence that they will be financially harmed if they are wrongfully enjoined. Because Plaintiffs seek only to exercise their First Amendment rights after work hours pending a final judgment in this case, and Defendants have not identified any risk of monetary loss to them as a result of this preliminary injunction, the Court concludes that no security is required.

---

(determining that because the "School Prayer Statute" challenged in that case was unconstitutional, "the public interest was not disserved by an injunction preventing its implementation").

[267] *Janvey*, 647 F.3d at 595.

[268] Fed. R. Civ. P. 65(c).

[269] *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (quoting *Corrigan Dispatch Co. v. Casa Guzman*, 569 F.2d 300, 303 (5th Cir. 1978)).

## V. Conclusion

For the reasons stated above, the Court concludes that Plaintiffs have carried their burden on all four factors identified by the Fifth Circuit to prevail on a motion for a preliminary injunction. Plaintiffs have shown that they have a substantial likelihood of success on the merits of their claims that the Charter Amendment violates their First Amendment rights to engage in political speech, is unconstitutionally vague, and is overbroad. Plaintiffs have also shown that there is a substantial threat that failure to grant the injunction will result in irreparable injury to Plaintiffs, that the threatened injury outweighs any damage that the injunction will cause to Defendants, and an injunction will not disserve the public interest.[270] Therefore, the Court hereby grants Plaintiffs' motion for a preliminary injunction and enjoins Defendants and their agents from enforcing Kenner City Charter Article I, Section 1.06 until there is a final judgment in this case. The Court also concludes that no security is required. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' "Motion for Preliminary Injunction"[271] is **GRANTED** and that Defendants and their agents are enjoined from enforcing Kenner City Charter Article I, Section 1.06 until there is a final judgment in this case.

**NEW ORLEANS, LOUISIANA**, this 26th day of July, 2017.



**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[270] *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011).

[271] Rec. Doc. 4.

50