## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**GEORGE BODE, et al.**                                    **CIVIL ACTION**

**VERSUS**                                                **CASE NO. 17-5483**

**KENNER CITY, et al.**                                   **SECTION: "G" (5)**

## ORDER

In this litigation, Plaintiffs, who are twelve "unclassified civil service" public employees of the City of Kenner, Louisiana,[1] seek declaratory relief and an injunction barring the City of Kenner ("the City"), and Chief of Police Michael Glaser in his official capacity ("Chief Glaser")[2] from enforcing Kenner City Charter Article I, Section 1.06 (hereinafter, the "Charter Amendment").[3] Plaintiffs allege that the Charter Amendment, which provides that non-elected City employees "shall not participate in any political activity on behalf of any city candidate in the City of Kenner elections," violates their First Amendment rights to engage in political speech, is unconstitutionally vague, and is overbroad.[4] The City responds that the Charter Amendment is narrowly tailored to achieve the City's compelling interest in maintaining an apolitical workforce.[5]

---

[1] Rec. Doc. 1 at 3–4. In particular, Plaintiffs are: (1) George Bode, the City of Kenner's Assistant Director of Inspections and Code Enforcement; (2) Adam Campo, the City of Kenner's Clerk of Court; (3) Gerald Dillenkoffer, an employee of the City of Kenner's Public Works Department; (4) Wendi Folse, the City of Kenner's Director of Personnel; (5) Mary-Sharon Howland, the Assistant to the Mayor, Defendant Ben Zahn; (6) Kenneth Marroccoli, the City of Kenner's Director of Parks and Recreation; (7) Theresa Nevels, the City of Kenner's Director of Purchasing; (8) Stephen Petit, Jr., an Assistant City Attorney and Kenner City Prosecutor; (9) Johnie Sullivan, an employee of the City of Kenner's Recreation Department; (10) Ronald Vitellaro, the City of Kenner's Director of Fleet Management; (11) Richard Walther, the City of Kenner's Director of Inspections and Code Enforcement; and (12) Mike Wetzel, the City of Kenner's Director of Finance. *Id.*

[2] On February 20, 2018, the Court granted a motion to dismiss filed by Mayor Ben Zahn. Rec. Doc. 59.

[3] *Id.* at 1–2.

[4] *Id.* at 2.

[5] Rec. Doc. 15.

Pending before the Court is Plaintiffs' "Motion for Summary Judgment."[6] Having reviewed Plaintiffs' motion, the memoranda in support and in opposition, the record, and the applicable law, for the reasons that follow, the Court will grant Plaintiffs' motion for summary judgment and issue a permanent injunction enjoining Defendants and their agents from enforcing Kenner City Charter Article I, Section 1.06 because prohibiting "*any* political activity" in *any* City election, by its plain language, provides no room for protected political expression.

## I. Background

### A.  *Factual Background*[7]

Plaintiffs are twelve "unclassified civil servants" employed by the City of Kenner, an instrumentality of the state of Louisiana.[8] In particular, Plaintiffs are political appointees who "serve at the pleasure of the Mayor" in various municipal positions, such as the Assistant to the Mayor, the City Prosecutor, and the Clerk of Court.[9] "Classified" civil servants in the City of Kenner receive certain employment protections under the Civil Service System.[10] By contrast, "unclassified" civil servants are employed at will by the Mayor.[11] Thus, newly-elected Mayors

---

[6] Rec. Doc. 50.

[7] The facts of this case are largely undisputed, as the parties filed joint stipulations of fact into the record before the preliminary injunction hearing. *See* Rec. Doc. 18. The following facts, based on Plaintiffs' Statement of Uncontested Facts, the parties' joint stipulations of facts, and evidence introduced at the preliminary injunction hearing, constitute the Court's "findings of fact" for purposes of Federal Rule of Civil Procedure 65(d). Moreover, to the extent that the City argues that there are disputed issues of fact preventing summary judgment, the Court finds that these contested facts are not material to the constitutional issues presented here. *See* Rec. Doc. 51-1 (Statement of Contested Facts).

[8] Rec. Doc. 4-1 at 1–2; Rec. Doc. 18 at 2; *see also* Rec. Doc. 1 at 3–4.

[9] Rec. Doc. 18 at 2; *see* Rec. Doc. 4-1 at 2; Rec. Doc. 1 at 3–4.

[10] Rec. Doc. 4-1 at 4, 14; *see also* Rec. Doc. 18 at 2; Rec. Doc. 1 at 5–6, 15–16.

[11] *See* Rec. Doc. 4-5 at 2; *see also* Rec. Doc. 4-4 at 2; Rec. Doc. 1 at 10.

may appoint new individuals to fill those "unclassified" positions and replace the individuals selected by the previous administration.[12]

On June 7, 2012, the Kenner City Council approved Resolution No. B-16261, which called an election to amend the Kenner City Charter to include the instant Charter Amendment.[13] The Charter Amendment, titled "Apolitical Workforce," provides: "Section 1.06. The nonelected employees in the employment of the City of Kenner shall not participate in any political activity on behalf of any city candidate in City of Kenner elections."[14] Nonelected employees include both classified and unclassified employees.[15] The term "political activity" is not defined in the Charter Amendment.[16] On November 6, 2012, 70 percent of the participating voters of the City of Kenner voted in favor of adopting the Charter Amendment and 30 percent voted against it.[17] Prior to the enactment of the Charter Amendment, the Kenner City Mayor had vetoed an ordinance in October 2011 seeking to prohibit unclassified employees of the City of Kenner from engaging in any political activity, and a similar attempt to limit City employees' political activity also failed in 1999.[18]

Prior to the enactment of the Charter Amendment, unclassified City employees were already prohibited from engaging in political activity during regular employment hours pursuant

---

[12] *See* Rec. Doc. 4-5 at 2; Rec. Doc. 4-4 at 2; Rec. Doc. 1 at 10.

[13] Rec. Doc. 18 at 3.

[14] *Id.*; *see* Rec. Doc. 1-1.

[15] Rec. Doc. 1-1.

[16] Rec. Doc. 18 at 3.

[17] *Id.*

[18] *Id.* at 4. *See* Rec. Doc. 1 at 9.

to Section 2-90 of the Kenner Code of Ordinances.[19] Section 2-90 directly defined the term "political activities" "[f]or purposes of this section."[20] Classified City employees were subject to the specific prohibitions on political activity established by the City's Civil Service System in Section 8.04(B) of the Kenner City Charter as well.[21] Section 8.04(B) defines "political activity" "[a]s used in the Part" and lists certain political activities that classified City employees could and could not do under that prior ban.[22]

---

[19] Rec. Doc. 4-3. Section 2-90 of the Kenner Code of Ordinances provides in full:

No elected official, director, supervisor, or other employee of the City of Kenner shall hire, fire, promote, refuse to promote, or take any other job action against any City of Kenner employee or job applicant because of that employee's participation, or refusal to participate, in any election or other political activities.

No elected official, director, supervisor, or other employee of the City of Kenner shall coerce or threaten any employee with any job action because of that employee's participation, or refusal to participate, in any election or other political activities.

(a) For purposes of this section, political activities include, but are not limited to, support or nonsupport of any candidate for public office, fundraising activities, support or nonsupport, of any referendum or millage or similar proposition, or participation in the activities of any political party.

(b) Provided, however, that no employee is allowed to engage in political activity while performing their job duties for the City of Kenner during regular employment hours.

[20] *Id.*

[21] *See* Rec. Doc. 31. In particular, Section 8.04(B) provides:

B. Party Membership; Elections. No member of the Kenner City Civil Service Board, or employee covered under this Section shall participate or engage in political activity; be a candidate for nomination or election to public office or be a member of any national, state, or local committee of a political party or faction; make or solicit contributions for a political party, faction or candidate; or take active part in the management of the affairs of a political party, faction, candidate or any political campaign, except to exercise his right as a citizen to express his opinion privately, to serve as a commissioner or official watcher at the polls, and to cast his vote as he desires.

(1) Contributions. No person shall solicit contributions for political purposes from any classified employee or use or attempt to use his position in City service to punish or coerce the political action of a classified employee.

(2) Political Activity Defined. As used in the Part, "political activity" means an effort to support or oppose the election of a candidate for political office or to support a particular political party in an election.

[22] *Id.* at 61.

As stated in the parties' joint stipulations, although Plaintiffs have "no desire" to engage in political activity during work hours, Plaintiffs "have a genuine desire to express themselves on political issues while outside of work hours, and would like to participate in these elections while 'off the clock.'"[23] After the adoption of the Charter Amendment, Plaintiffs were prohibited from supporting local candidates in the 2016 Kenner City mayoral and City Council special election.[24] Plaintiffs will also be prevented by the Charter Amendment from supporting City candidates in the upcoming 2018 Kenner City elections.[25] Plaintiffs have expressed that they do not know which activities are prohibited by the Charter Amendment's restrictions on engaging in "political activity" and which activities are not.[26]

The City of Kenner will hold its next primary election for Mayor, Police Chief, and City Council on March 24, 2018, with the general election set for April 28, 2018.[27] Qualifying for that election began January 3, 2018.[28] To date, there are no known cases where the Charter Amendment's prohibitions have resulted in any adverse employment action in the City of Kenner.[29]

---

[23] Rec. Doc. 18 at 2.

[24] *See* Rec. Doc. 4-4 at 2; Rec. Doc. 4-5 at 2; Rec. Doc. 4-6 at 2.

[25] *See* Rec. Doc. 4-4 at 2; Rec. Doc. 4-5 at 2; Rec. Doc. 4-6 at 2.

[26] *See* Rec. Doc. 4-4 at 1–2 (Plaintiff concurring with the facts alleged in the Plaintiffs' complaint and stating that the Charter Amendment fails to give him notice as to what activity is prohibited); Rec. Doc. 4-5 at 1–2 (same); Rec. Doc. 4-6 at 1–2 (same); *see also* Rec. Doc. 1 at 8, 10 (Plaintiffs alleging that they are fearful of retribution for violating the Charter Amendment and are unclear on what the Charter Amendment prohibits).

[27] Rec. Doc. 18 at 2.

[28] *Id.*

[29] *Id.* at 4.

### B.    Procedural History

Plaintiffs filed a complaint in this matter on June 1, 2017.[30] On June 20, 2017, Plaintiffs filed a motion for a preliminary injunction.[31] On July 5, 2017, the Court held a hearing on Plaintiffs' motion for a preliminary injunction.[32] On July 26, 2017, the Court granted Plaintiffs' motion and enjoined Defendants and their agents from enforcing Kenner City Charter Article I, Section 1.06 until there is a final judgment in this case.[33]

On August 11, 2017, Plaintiffs filed the instant motion for summary judgment.[34] On August 22, 2017, the City of Kenner filed an opposition to the motion.[35] Also on August 22, 2017, Mayor Ben Zahn and Police Chief Michael Glaser each filed an opposition to the motion, adopting the arguments made by the City of Kenner.[36] On August 30, 2017, with leave of Court, Plaintiffs filed a reply memorandum in further support of the motion for summary judgment.[37] On February 20, 2018, the Court granted a motion to dismiss filed by Defendant Mayor Ben Zhan.[38]

---

[30] Rec. Doc. 1.

[31] Rec. Doc. 4.

[32] Rec. Doc. 30.

[33] Rec. Doc. 42.

[34] Rec. Doc. 50.

[35] Rec. Doc. 51.

[36] Rec. Docs. 52, 53.

[37] Rec. Doc. 57.

[38] Rec. Doc. 59.

## II. Parties' Arguments

### A.    *Plaintiffs' Motion for Summary Judgment*

In their motion, Plaintiffs seek the following relief: (1) a declaratory judgment that Kenner City Charter Article I, Section 1.06 is unconstitutional; (2) a permanent injunction barring the enforcement of the Charter Amendment; (3) at least, nominal damages; and (4) attorneys' fees and costs.[39] Plaintiffs assert that the facts in this case are undisputed, and they are entitled to summary judgment in their favor.[40]

Plaintiffs argue that the Charter Amendment discriminates based on the content of the speech, *i.e.* political speech, and therefore must survive strict scrutiny, *i.e.* that a compelling government interest exists and that the least restrictive means was used to serve that interest.[41] Moreover, Plaintiffs contend that Defendants bear the burden of showing that the Charter Amendment is constitutional.[42]

Plaintiffs assert that the Charter Amendment fails both prongs of the strict scrutiny test.[43] Plaintiffs argue that the Charter Amendment is not narrowly tailored to suit any possible compelling interest.[44] Plaintiffs point out that the Charter Amendment attempts do ban *all* political expression related to City of Kenner elections "without any limiting definitions, explanations, or exceptions."[45] Plaintiffs aver that the City could simply enforce Section 2-90 of the Code of

---

[39] Rec. Doc. 50-1 at 6.

[40] *Id.* at 10.

[41] *Id.*

[42] *Id.* at 10–11.

[43] *Id.* at 11.

[44] *Id.* at 11–12.

[45] *Id.* at 12.

Ordinances, which already prohibits public employees from engaging in political activity during work hours.[46] Plaintiffs also contend that the City could enact less restrictive measures.[47] For example, Plaintiffs note that in *Wachsman v. City of Dallas*, the Fifth Circuit upheld a Dallas statute that prohibited civil service employees from engaging in political activity, but allowed for endorsements of candidates to groups of fifteen or fewer people, placing yard signs or bumper stickers on their property, or political activity by spouses of the employees.[48] Plaintiffs also note that the City could employ such measures as those utilized by the federal Hatch Act, which allows federal employees to attend rallies, donate money, and express opinions, as long as the employees are not wearing a government uniform or identifying themselves as federal employees.[49] Therefore, "because there was 'little tailoring' of Section 1.06," Plaintiffs assert they are entitled to summary judgment on the basis that Charter Amendment fails the strict scrutiny analysis.[50]

Second, Plaintiffs argue that the Charter Amendment is unconstitutionally vague, as its prohibitions are not clearly defined and people of common intelligence would differ as to its application and meaning.[51] Plaintiffs aver that the Charter Amendment does not define what the term "political activity" covers.[52] Furthermore, Plaintiffs argue that the Charter Amendment fails to "clearly define" its terms "or explicitly identify what speech or conduct is allegedly included or

---

[46] *Id.*

[47] *Id.*

[48] *Id.* at 13 (citing *Wachsman v. City of Dallas*, 704 F.2d 160 (5th Cir. 1983)).

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.* at 15.

excluded in its broad ban."[53] Therefore, Plaintiffs argue that they "have sufficiently shown that Section 1.06 risks chilling substantial amounts of their protected speech due to its vagueness."[54] Accordingly, Plaintiffs assert that the Charter Amendment "should be declared unconstitutionally vague and enjoined."[55]

Third, Plaintiffs contend that the Charter Amendment is "overbroad and has no 'legitimate sweep,' as it prohibits a substantial amount of protected expression."[56] According to Plaintiffs, the Charter Amendment restricts speech unrelated to both the City's goals and Plaintiffs' employment.[57] Moreover, Plaintiffs aver that the Charter Amendment is subject to various interpretations, "leading it to exclude even voting or privately expressing an opinion from its overbroad reach."[58] Accordingly, Plaintiffs assert that they are entitled to summary judgment stating that the Charter Amendment is unconstitutionally overbroad.[59]

Fourth, Plaintiffs argue that they are entitled to declaratory relief because the Court's preliminary injunction is the only reason the Charter Amendment is not currently being enforced against Plaintiffs.[60] Plaintiffs aver that they are entitled to a permanent injunction barring the enforcement of the Charter Amendment because all four requirements for a permanent injunction are met: (1) success on the merits; (2) that a failure to grant the injunction will result in irreparable

---

[53] *Id.*

[54] *Id.* at 16.

[55] *Id.*

[56] *Id.*

[57] *Id.* at 17.

[58] *Id.*

[59] *Id.*

[60] *Id.* at 18.

injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest.[61]

Plaintiffs contend that they will suffer irreparable harm if the permanent injunction is not granted, as Plaintiffs aver that the Supreme Court has determined that the loss of their First Amendment freedoms "for even minimal periods of time" constitutes irreparable injury.[62] Plaintiffs further assert that the potential for injury to Plaintiffs' rights if injunctive relief is not granted "substantially outweighs" any harm if a permanent injunction is granted.[63] Plaintiffs aver that the City has no interest in enforcing an unconstitutional law that deprives Plaintiffs of their First Amendment rights, whereas Plaintiffs would be deprived of their rights to freedom of expression if a permanent injunction is not granted.[64] Furthermore, Plaintiffs argue that granting a permanent injunction here will serve, rather than hurt, the public interest, as it will protect Louisiana citizens' rights to freedom of speech and provide Plaintiffs with the basic protections of due process before conclusively restricting their rights to engage in political activity.[65]

Fifth, Plaintiffs contend that they are entitled to at least nominal damages based on the violation of their constitutional rights.[66] Finally, Plaintiffs assert they are entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988.[67]

---

[61] *Id.* at 19.

[62] *Id.* at 20 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

[63] *Id.*

[64] *Id.* at 20–21.

[65] *Id.* at 21–22.

[66] *Id.* at 22 (citing *Williams v. Kaufman County*, 352 F.3d 994, 1014 (5th Cir. 2003)).

[67] *Id.* at 23.

## B.    The City's Arguments in Opposition to the Motion for Summary Judgment

In opposition, the City of Kenner argues that Plaintiffs' motion for summary judgment should be denied because there are multiple genuine issues of material fact in dispute.[68] The City notes that the Section 8.04(B)(2) of the City Charter defines the term "political activity," as "an effort to support or oppose the election of a candidate for political office or to support a particular political party in an election."[69] Additionally, the City argues that the public records Plaintiffs cite to support the unconstitutionality of the Charter Amendment are inapposite because Opinion 11-0256 from the State of Louisiana Department of Justice does not consider the constitutionality of the 2011 amendment.[70] Furthermore, the City contends that the Fifth Circuit has rejected Plaintiffs' argument that only classified employees may be subject to political restrictions.[71]

The City contends that the Charter Amendment survives strict scrutiny because it has fulfilled its burden of showing that less restrictive means are inadequate.[72] The City contends that "Plaintiffs' proposed less restrictive alternatives, such as only restricting political activities during work hours, are far less effective" than the Charter Amendment.[73] The City argues that such a restriction "would allow for after work hours' political performance to affect employment and advancement."[74] The City asserts that "[t]he Supreme Court has held that a statute that limits a public employee's right to undertake any political activity other than exercising his right as a

---

[68] Rec. Doc. 51 at 1.

[69] *Id.* at 2.

[70] *Id.* at 2–3.

[71] *Id.* at 3 (citing *McCormick v. Edwards*, 646 F.2d 173, 179 (5th Cir. 1981)).

[72] *Id.* at 4.

[73] *Id.* at 4–5.

[74] *Id.* at 5.

citizen to privately express his opinion and cast his vote is constitutional and is not impermissibly vague or overbroad."[75] Therefore, the City argues that Plaintiffs have no basis in law or fact to contend that the Charter Amendment is unconstitutional.[76]

Next, the City argues that the Charter Amendment is narrowly tailored to fulfill the compelling interest of avoiding the politicization of its public employees.[77] The City avers that the Charter Amendment conforms to the Supreme Court's decision in *Broadrick v. Oklahoma*, is more narrowly tailored than the law authorized by the Supreme Court, and applies only to employee participation in partisan city candidate elections.[78] Moreover, the City avers that the Charter Amendment does not prevent Plaintiffs from supporting candidates in elections that do not involve a city candidate.[79] Thus, the City argues that the Charter Amendment is narrowly tailored to serve the City of Kenner's compelling interests in "maintaining the loyalty, efficiency, and nonpartisanship of its employees."[80] The City also argues that the Charter Amendment does not prohibit Plaintiffs from engaging in political activity on other issues such as "non-partisan charter amendments, bond issues, referendum, or other ballot measures."[81] By contrast, the City contends that Plaintiffs want to engage in the very partisan political activity that the Hatch Act and other cities have tried to prevent, *e.g.*, "to keep the employee from being involved in the politics that

---

[75] *Id.* (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 603 n.1, 606, 618 (1973)).

[76] *Id.*

[77] *Id.*

[78] *Id.* (citing *Broadrick*, 413 U.S. at 601).

[79] *Id.* at 8–9.

[80] *Id.* at 10.

[81] *Id.*

elect his boss."[82] Therefore, the City asserts that Plaintiffs are not entitled to summary judgment because the Charter Amendment is narrowly tailored.[83]

The City next asserts that the Charter Amendment is not vague.[84] The City asserts that "Plaintiffs quibble about the meaning of the term 'political activities', without taking into account Supreme Court and Fifth Circuit case law allowing such limitations."[85] The City argues that Plaintiffs' reliance on the Fifth Circuit case *Hobbs v. Thompson* is misplaced, considering subsequent Supreme Court decisions in *Broadrick* and *United States Civil Service Commission v. National Association of Letter Carriers AFL-CIO*.[86] Furthermore, the City notes that the vagueness argument in *Hobbs* dealt with the undefined phrase "prominently identify," which the City contends is distinct from the phrase "political activity" at issue here.[87] According to the City, *Broadrick* stands for the proposition that "a statute that limits a public employee's right to undertake any political activity other than exercising his right as a citizen to privately express his opinion and cast his vote is constitutional."[88]

The City also contends that the Charter Amendment is not overbroad.[89] The City argues that "the Fifth Circuit continues to follow the Supreme Court's decisions in *Letter Carriers* and

---

[82] *Id.* at 10–11 (quoting *Villejo v. City of San Antonio*, 485 F. Supp. 2d 777 (W.D. Tex. 2007)).

[83] *Id.* at 6.

[84] *Id.* at 11.

[85] *Id.* at 12.

[86] *Id.* at 12–13.

[87] *Id.* at 13.

[88] *Id.*

[89] *Id.*

*Broadrick*, limiting political activities of public employees in a manner similar to that provided in Section 1.06 of the City of Kenner's Charter."[90]

Based on the foregoing, the City also argues that Plaintiffs are not entitled to a declaratory judgment because as a matter of law the Charter Amendment is not unconstitutional, vague, or overly broad.[91] Moreover, the City asserts that Plaintiffs have not met the four requirements for a permanent injunction.[92] Specifically, the City contends that, for the reasons discussed, Plaintiffs do not succeed on the merits.[93] According to the City, Plaintiffs face no injury here because the Charter Amendment is constitutional.[94] By contrast, the City argues that the threatened harm to the City if a permanent injunction is granted is great, as the City has an interest in preventing City employees from taking part in partisan local political activities and enforcing the will of the voters.[95] The City also contends that granting a permanent injunction will disserve the public interest, as the majority of the participating voters in Kenner approved the Charter Amendment "based on their vested interest in independent and efficient government employees."[96]

Finally, the City asserts that Plaintiffs are not entitled to nominal damages or attorneys' fees because Plaintiffs should not prevail on the merits.[97] Alternatively, the City contends, there is a genuine issue of material fact as to these issues because "there is no evidence in the record that

---

[90] *Id.* at 13–14 (citing *Phillips v. City of Dallas*, 781 F.3d 772, 782 (5th Cir. 2015)).

[91] *Id.* at 14.

[92] *Id.* at 15.

[93] *Id.*

[94] *Id.* at 16.

[95] *Id.*

[96] *Id.* at 17.

[97] *Id.* at 18.

the City of Kenner has undertaken, or authorized any agents or employees to undertake, the actions alleged by Plaintiffs, including, but not limited to, antagonizing actions, attempted investigations, and media campaigns."[98]

## C. *Plaintiffs' Arguments in Further Support of the Motion for Summary Judgment*

In reply, Plaintiffs argue that the City is attempting "to change the facts of this case by misstating and confusing several issues."[99] Plaintiffs assert that a question of law, not fact, is before the Court.[100] Plaintiffs note that, although the City argues that there are contested issues of material fact, it has not submitted any evidence to support such an assertion.[101] Plaintiffs further contend that the Supreme Court has held that the facial validity of a statute is a question of law.[102]

Plaintiffs argue that the City cannot meet its burden of showing that the Charter Amendment is constitutional.[103] Plaintiffs contend that the Charter Amendment is not narrowly tailored, and they note that the City has not offered any evidence to support its assertion that less restrictive means would not be adequate.[104] Likewise, Plaintiffs argue that the City's reliance on *Broadrick* is misplaced because, there, the law defined a broad range of political activities that were prohibited but also allowed civil servants to express a private opinion.[105]

---

[98] *Id.*

[99] Rec. Doc. 57 at 1.

[100] *Id.* at 2.

[101] *Id.*

[102] *Id.* at 3 (citing *Vill. Of Hoffman Estates, Inc. v. Flipside, Hoffman Estates, Inc.*, 477 U.S. 242, 249 (1986)).

[103] *Id.* at 4.

[104] *Id.* at 5.

[105] *Id.* at 6 (citing 413 U.S. at 605–06).

Plaintiffs also assert that the issue of whether the Charter Amendment is unconstitutionally vague is a question of law.[106] Plaintiffs contend that the Charter Amendment's terms remain undefined and subject to differing interpretations.[107]

Finally, Plaintiffs assert that the issue of whether the Charter Amendment is overbroad is a question of law.[108] Plaintiffs contend that the City's reliance on *Phillips v. City of Dallas* is misplaced because that case dealt with discipline against a fireman who wanted to run for office, not the "complete elimination of the plaintiff's ability to exercise his constitutional rights."[109]

### III. Legal Standard

#### A.    *Legal Standard on a Motion for Summary Judgment*

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[110] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[111] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and

---

[106] *Id.* at 8 (citing *United States v. Gonzalez-Longoria*, 813 F.3d 225, 229 (5th Cir.), *on reh'g en banc*, 831 F.3d 670 (5th Cir. 2016); *United States v. Clark*, 582 F.3d 607, 612 (5th Cir. 2009)).

[107] *Id.*

[108] *Id.* (citing *Hang On, Inc. v. City of Arlington*, 65 F.3d 1248, 1258 (5th Cir. 1995); *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 634 (1980)).

[109] *Id.* (citing 781 F.3d 772 (5th Cir. 2015)).

[110] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[111] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[112] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law.[113]

"[A] nonmoving party is not entitled to rest on his pleadings, but must carry his burden of providing evidence of a genuine issue of material fact."[114] "That burden can be met by depositions, answers to interrogatories and admissions on file and affidavits."[115] The Fifth Circuit has "repeatedly held that self-serving affidavits, without more, will not defeat a motion for summary judgment."[116] However, a nonmovant's deposition testimony is often considered by a court in recognizing that a genuine issue of material fact exists, which precludes summary judgment.[117]

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[118] Thereafter, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence

---

[112] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[113] *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[114] *King v. Chide*, 974 F.2d 653, 656 (5th Cir. 1992) (citing *Reese v. Anderson*, 926 F.2d 494, 499 (5th Cir. 1991)); *see also Celotex*, 477 U.S. at 325; *see also Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[115] *Id*. (citing Fed. R. Civ. P. 56(c)).

[116] *Tyler v. Cedar Hill Indep. Sch. Dist.*, 426 Fed.Appx. 306, 307 (5th Cir. 2011) (per curiam) (citing *DirectTV, Inc. v. Budden*, 420 F.3d 521, 531 (5th Cir. 2005); *United State v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001)).

[117] *See, e.g., Vetter v. Frosch*, 599 F.2d 630 (5th Cir. 1979); *see also, e.g., King*, 974 F.2d at 656 (5th Cir. 1992).

[118] *Celotex*, 477 U.S. at 323.

supports his claims.[119] To withstand a motion for summary judgment, the nonmoving party must show that there is a genuine issue for trial by presenting evidence of specific facts.[120] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[121] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[122]

## B.    *Legal Standard on a Request for Declaratory Judgment*

Declaratory relief is appropriate where there exists an Article III controversy.[123] Such a controversy exists where "threats of prosecution [are not] imaginary, speculative or chimerical."[124] It "is irrelevant whether plaintiffs were successful in obtaining monetary or injunctive awards and that, instead, declaratory judgment relief is a proper way for individuals to proceed to ensure that their constitutional rights are protected."[125]

---

[119] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

[120] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1996)).

[121] *Little*, 37 F.3d at 1075.

[122] Fed. R. Civ. P. 56(c)(2); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

[123] *Brister v. Faulkner*, 214 F.3d 675, 681 (5th Cir. 2000) (citing *High Ol' Times, Inc. v. Busbee*, 621 F.2d 135, 139 (5th Cir. 1980)).

[124] *Id.* (citing *Steffel v. Thompson*, 415 U.S. 452 (1974)).

[125] *Id.* (citing *Steffel*, 415 U.S. at 452).

## C.    *Legal Standard on a Request for a Permanent Injunction*

"The party seeking a permanent injunction must satisfy a four-part test: it must show (1) success on the merits; (2) the failure to grant the injunction will result in irreparable injury; (3) the injury outweighs any damage that the injunction will cause the opposing party; and (4) the injunction will not disserve the public interest."[126] "A plaintiff must allege 'specific facts' to support a finding of irreparable injury."[127]

"A permanent injunction is generally only granted where . . . a full trial on the merits has occurred."[128] However, a permanent injunction may be granted on a motion for summary judgment where there is no genuine dispute of any material fact, and the plaintiffs are entitled to judgment as a matter of law because they have established the necessary elements for a permanent injunction.[129] "'[T]he scope of injunctive relief is dictated by the extent of the violation established,' and an injunction must be narrowly tailored to remedy the specific action necessitating the injunction."[130] Regardless of whether the request for injunctive relief is granted or denied, Federal Rule of Civil Procedure 52(a) requires the Court to "state the findings of fact and conclusions of law that support its action."[131]

---

[126] *United Motorcoach Assoc., Inc., v. City of Austin*, 851 F.3d 489, 492–93 (citing *VRC LLC v. City of Dallas*, 460 F.3d 607, 611 (5th Cir. 2006)).

[127] *ITT Educational Services, Inc. v. Arce*, 533 F.3d 342, 347 (5th Cir.2008) (citing *Kemlon Prods. & Dev. Co. v. United States*, 638 F.2d 1315, 1322 (5th Cir. 1981)).

[128] *Id.* (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 396 (1981)).

[129] *O'Connor v. Smith*, 427 F. App'x 359, 367–67 (5th Cir. 2011).

[130] *Fiber Systems Intern., Inc. v. Roehrs*, 470 F.3d 1150, 1159 (5th Cir. 2006) (quoting *John Doe #1 v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004)).

[131] Fed. R. Civ. P. 52(a)(1), (2).

## IV. Analysis

In their motion, Plaintiffs seek the following relief: (1) a declaratory judgment that Kenner City Charter Article I, Section 1.06 is unconstitutional; (2) a permanent injunction barring the enforcement of the Charter Amendment; (3) at least, nominal damages; and (4) attorneys' fees and costs.[132] Accordingly, the Court addresses each of these issues in turn.

**A.** ***Whether Plaintiffs are Entitled to Declaratory Judgment that the Charter Amendment is Unconstitutional***

Plaintiffs contend that they are entitled to declaratory judgment that the Charter Amendment is unconstitutional.[133] The Charter Amendment provides that the "nonelected employees in the employment of the City of Kenner shall not participate in any political activity on behalf of any city candidate in City of Kenner elections."[134] Plaintiffs assert that the Charter Amendment violates the First and Fourteenth Amendments of the United States Constitution because it is: (1) a regulation on political speech that cannot survive strict scrutiny; (2) unconstitutionally vague; and (3) overbroad.[135] In response, the City argues that Plaintiffs are not entitled to a declaratory judgment because, as a matter of law, the Charter Amendment is not unconstitutional.[136] Therefore, the Court addresses each of the constitutional challenges raised by Plaintiffs in turn.

---

[132] Rec. Doc. 50-1 at 6.

[133] *Id.* at 18.

[134] Rec. Doc. 1-1 at 2.

[135] Rec. Doc. 50-1 at 10–18.

[136] Rec. Doc. 51 at 14.

### 1.      Whether the Charter Amendment can Survive Strict Scrutiny

The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws "abridging the freedom of speech."[137] As an initial matter, the Court notes that the parties do not dispute that the Charter Amendment is subject to strict scrutiny as a content-based regulation on Plaintiff's political speech.[138] To survive strict scrutiny, the City bears the burden of proving that the Charter Amendment is "narrowly tailored" to serve a "compelling interest."[139] In the instant motion, Plaintiffs do not contest that the City has a compelling governmental interest in ensuring a nonpartisan employee workforce.[140] Accordingly, the only issue before the Court is whether the Charter Amendment is narrowly tailored to serve that interest. "In considering this question, a court assumes that certain protected speech may be regulated, and then asks what is the least restrictive alternative that can be used to achieve that goal."[141] Therefore, the Court must consider "whether the challenged regulation is the least restrictive means among available, effective alternatives."[142]

In their motion, Plaintiffs argue that the Charter Amendment is expansive, as it restricts "any political activity" without defining the term "political activity" or providing a clear list of

---

[137] *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2228 (2015) (quoting U.S. Const. amend. I).

[138] *See* Prelim. Inj. Tr., July 5, 2017, at 4:12–4:18 (the City confirming that it is "correct" that "there isn't a dispute that this is an attempt to regulate political speech and that strict scrutiny applies"); *see also* Rec. Doc. 42 at 24–28 (determining that the Charter Amendment's content-based prohibition on Plaintiffs' political speech is subject to strict scrutiny).

[139] *Reed*, 135 S. Ct. at 2228.

[140] Rec. Doc. 50-1 at 12.

[141] *Ashcroft v. Am. Civil Liberties Union*, 542 U.S. 656, 666 (2004).

[142] Rec. Doc. 50-1 at 12.

easily identifiable political activities that are and are not prohibited.[143] Plaintiffs also assert that there are a number of less restrictive alternative measures that the City could adopt to accomplish its compelling interests, such as a law similar to the Federal Hatch Act or the Dallas Charter approved by the Fifth Circuit in *Wachsman v. City of Dallas*.[144]

In opposition, the City contends that the Charter Amendment survives strict scrutiny because it has fulfilled its burden of showing that less restrictive means are inadequate since the alternatives proposed by Plaintiffs, such as only restricting political activities during working hours, are less effective.[145] The Court finds this argument unavailing. Although Plaintiffs do argue that one available alternative would be enforcement of Kenner Code of Ordinances Section 2-90, which restricts political activity during working hours, Plaintiffs also argue that other available alternatives exist. For example, Plaintiffs note that the Dallas Charter approved by the Fifth Circuit in *Wachsman* allowed for endorsement to groups of less than 15, yard signs, bumper stickers, and allowed spouses of city employees to publically endorse candidates.[146] Plaintiffs also note that the Federal Hatch Act allows federal employees to attend rallies, donate money, and express opinions, as long as they are not wearing a government uniform or identifying themselves as federal employees.[147] The City presents no argument as to how these less restrictive means are inadequate.

---

[143] *Id.* at 12–13.

[144] *Id.*

[145] Rec. Doc. 51 at 4–5.

[146] Rec. Doc. 50-1 at 13 (citing *Wachsman*, 704 F.2d at 162, n.3).

[147] *Id.* (citing Rec. Docs. 27-1, 27-2).

Next, the City asserts that the Charter Amendment is narrowly tailored because it conforms to the Supreme Court's decision in *Broadrick v. Oklahoma*.[148] In *Broadrick*, the Supreme Court upheld an Oklahoma statute that restricted "the political activities of the State's classified civil servants in much the same manner that the Hatch Act."[149] The Oklahoma statute prohibited classified civil service employees from participating in "a broad range of political activities and conduct," including soliciting campaign donations, becoming "a member of any national, state or local committee of a political party," or participating "in any political campaign, except to exercise his right as a citizen privately to express his opinion and to cast his vote."[150]

The Charter Amendment at issue here provides that nonelected City employees such as Plaintiffs are prohibited from participating in "*any* political activity on behalf of any city candidate in the City of Kenner elections."[151] No definition of "political activity" is provided in the Charter Amendment itself that might limit the scope of the restricted conduct. Nor does the Charter Amendment set out a specific list of conduct that is prohibited and not prohibited such that the broad sweep of covered political expression may be narrowed, unlike the provisions restricting public employees' political activity in *Broadrick* and the other cases cited by the City.[152]

Such a broad, limitless ban appears to extend to a wide range of political conduct that is either unrelated to the City's compelling interests or so attenuated that the City could achieve its compelling interests by adopting less restrictive means. For example, "any political activity on

---

[148] Rec. Doc. 51 at 5.

[149] 413 U.S. 601, 602 (1973).

[150] *Id.* at 605–07.

[151] Rec. Doc. 1-1 at 2 (emphasis added).

[152] *See Broadrick*, 413 U.S. at 602; *Letter Carriers*, 413 U.S. at 556; *Phillips*, 781 F.3d at 776–77; *Wachsman*, 704 F.2d at 175.

behalf of any city candidate in the City of Kenner elections" appears to extend to a private conversation regarding a Plaintiff's support or non-support of a city candidate, regardless of where it occurs or whether it is between a Plaintiff and a single individual, a small group, or a large audience. Likewise, it appears to also prohibit Plaintiffs from attending informational forums or private events involving a city candidate, driving another family member's vehicle with a city candidate's bumper sticker on it, or posting, liking, or sharing social media posts or general news articles on social media related to a city candidate in any undefined way or circumstance. Therefore, the Charter Amendment appears to prohibit employees from privately expressing their opinions.

The City next argues that the Charter Amendment is narrowly tailored because it is limited to City elections involving City candidates.[153] Thus, according to the City, Plaintiffs are not prohibited from engaging in political activity during parish, state, or federal elections or from becoming involved in other public issues, such as non-partisan charter amendments, bond issues, referendums, or other ballot measures.[154] The City relies on *Hickman v. City of Dallas*, a case decided by a district court in the Northern District of Texas, to support this assertion.[155]

In *Hickman*, the plaintiff, an employee of the City of Dallas, challenged a city charter that prohibited him from becoming a candidate for a position on the DeSoto City Council, a city within Dallas County.[156]  The district court found that the City of Dallas' compelling interest in maintaining the loyalty, efficiency, and nonpartisanship of its employees, was sufficient to restrict

---

[153] Rec. Doc. 51 at 8–9.

[154] *Id.* at 8–10; Rec. Doc. 51-1 at 2.

[155] Rec. Doc. 51 at 8–9 (citing 475 F. Supp. 137 (N.D. Tex. 1979)).

[156] 475 F. Supp. at 139.

the rights of its employees to become candidates for public office.[157] The district court found that the charter was unconstitutional as applied to the plaintiff because there was not "the necessary nexus between Dallas' compelling public objectives and its consequent right to burden First Amendment activities to accomplish such objectives (on the one hand), and Plaintiff's proposed candidacy . . . (on the other hand)."[158]

Unlike *Hickman*, the City argues that the Charter Amendment has a reasonable correlation to the compelling public objectives of the City because "it restricts a non-elected City of Kenner employee from undertaking political activities in support or opposition of a city candidate exclusively in an election in the City of Kenner."[159] The Court finds this argument unpersuasive. Whereas *Hickman* involved only a restriction on the plaintiff's right to run for political office, the Charter Amendment at issue in this case can be interpreted as a complete ban on Plaintiff's participation in elections of city candidates. Although the Charter Amendment does not prohibit City employees from participating in elections other than those involving City candidates, such is not a remedy to the complete ban on Plaintiffs' participation in elections involving the City. This Court knows of no authority, nor has the City pointed to any, which allows a total ban on political speech directed to a particular type of election.

Finally, the City contends that the Charter Amendment is narrowly tailored because it only applies to partisan elections.[160] The City attempts to distinguish this case from *Villejo v. City of San Antonio*, where a district court in the Western District of Texas enjoined the City of San

---

[157] *Id.* at 140–41.

[158] *Id.* at 141.

[159] Rec. Doc. 51 at 9.

[160] *Id.* at 10–11.

Antonio from enforcing a city directive preventing city employees from participating in a bond election.[161] This argument is equally unavailing. The court in *Villejo* did note that there is a distinction between bond measures and partisan candidate elections, stating that the government's interests in regulating speech related to issues such as bonds are not as compelling as its "interests in regulating the free speech and associational rights of employees to participate in elections [] dealing with their potential supervisors."[162] However, this distinction does not absolve the City of its burden here. Plaintiffs do not dispute that the City has a compelling governmental interest in ensuring a nonpartisan employee workforce.[163] Nevertheless, the City bears the burden of establishing that the Charter Amendment is narrowly tailored to serve that interest, a burden it has not carried.

At the preliminary injunction hearing previously held in this matter, the City argued that the Charter Amendment does not prevent voting in City elections, participating in private political conversations with spouses, or informing others who a Plaintiff will be voting for during a City election.[164] However, the City's argument is undercut by the text of the Charter Amendment itself, which offers no such limitations on its extensive reach. Instead, the term "any political activity" means precisely what it says: all political activity involving City candidates, in any manner or circumstance, is prohibited. By contrast, the City has not adequately explained how the plain text

---

[161] *Id.* at 11 (citing 485 F. Supp. 2d 777 (W.D. Tex. 2007)).

[162] 485 F. Supp. 2d at 782.

[163] Rec. Doc. 50-1 at 12.

[164] *See, e.g.*, Prelim. Inj. Tr., July 5, 2017, at 28:9–28:16 (the City representing that, "as an example," the Charter Amendment allows employees to cast votes and express their personal opinions to a spouse).

of the Charter Amendment can be interpreted such that it does not include the act of voting or simply stating who one is voting for in a City election.

In its statement of contested facts, the City argues that the term "political activity" is defined in Section 8.04 of the Kenner City Charter, which states, "[a]s used in the Part," political activity is "an effort to support or oppose the election of a candidate for political office or to support a particular political party in an election."[165] The Charter Amendment does not adopt this definition or incorporate it by reference. Furthermore, the Court notes that in its prior opposition to Plaintiffs' motion for a preliminary injunction, the City argued that at least four additional definitions of the term "political activity" could be applicable.[166] Therefore, although the City represents that the Kenner City Charter includes its own definition of "political activity;" that definition, contained in Section 8.04(B)(2) of the Kenner City Charter, explicitly states that it only applies to that Part and the restrictions on "political activity" in Section 8.04(B),[167] and the City has not presented any evidence demonstrating that it applies to the Charter Amendment in Section 1.06 of the Kenner City Charter. As such, Defendants have not met their burden of establishing that the Charter Amendment is narrowly tailored to serve a compelling state interest.

Finally, the City cites to cases that upheld various restrictions on the political activities of government employees in support of its contention that the Charter Amendment is constitutional.[168] However, the limitations on public employees' political expression imposed in

---

[165] Rec. Doc. 51-1 at 1; *see also* Rec. Doc. 31 at 61.

[166] *See* Rec. Doc. 42 at 34–36.

[167] *See* Kenner City Charter § 8.04(B)(2) ("As used in the Part, 'political activity' means an effort to support or oppose the election of a candidate for political office or to support a particular political party in an election."); Rec. Doc. 31 at 61.

[168] Rec. Doc. 51 at 4–11.

those cases are clearly distinguishable from the Charter Amendment at issue here, as they either: (1) provide a list of specific political activities that are prohibited, such as running for office, actively participating in political campaigns, using official positions to influence an election, or making campaign donations; or (2) include a list of political activity that is explicitly not prohibited, such as voting in elections or engaging in private political discussions.[169] Indeed, in *Wachsman v. City of Dallas*, the Fifth Circuit upheld certain restrictions on city employees' political activity where the ban left "unregulated a considerable scope of city employee political activity," and "city employees [were] limited only to an extent that furthers their ability to perform optimally."[170] The Charter Amendment, by contrast, clearly extends to *all* political activity, regardless of its connection to the City's compelling interests or Plaintiffs' employment with the City. Indeed, contrary to the City's assertion that the Charter Amendment is narrowly tailored, it appears that there was little tailoring involved in drafting the Charter Amendment's blanket prohibition on "any political activity" with regard to City elections.[171]

The City has not presented any evidence to meet its burden of showing the less restrictive means of achieving the City's compelling government interests are inadequate. Accordingly, because there is no genuine issue of material fact in dispute, the Court finds that Plaintiffs are

---

[169] For example, the federal Hatch Act imposes far more limited and specific prohibitions against federal employees taking "any active part in political management or in political campaigns" or using their "official authority or influence for the purpose of interfering with or affecting the result of an election." *See Mitchell*, 330 U.S. at 94–95; *Nat'l Ass'n of Letter Carriers, AFL-CIO*, 413 U.S. at 550. *See also Wachsman v. City of Dallas*, 704 F.2d 160, 162 (5th Cir. 1983) (upholding more limited restrictions on the political speech of government workers, particularly after the city had "authoritatively reinterpreted" the provision so that it did *not* prohibit such conduct as endorsing a candidate to groups of fifteen or fewer people, placing signs or bumper stickers on personal property, and working in campaign headquarters).

[170] *Id.* at 174.

[171] *See generally Hobbs v. Thompson*, 448 F.2d 456, 470–71 (5th Cir. 1971) (holding that "a blanket prohibition upon political activity, not precisely confined to remedy specific evils, would deal a serious blow to the effective functioning of our democracy").

entitled to judgment as a matter of law declaring that the Charter Amendment is a violation of Plaintiffs' free speech rights under the First Amendment, and is therefore unconstitutional.

### 2. Whether the Charter Amendment is Unconstitutionally Vague

Next, Plaintiffs assert that the Charter Amendment is unconstitutionally vague under the First and Fourteenth Amendments, as the Charter Amendment's prohibitions are not clearly defined and people of common intelligence would differ as to its application and meaning.[172] In response, the City asserts that the Charter Amendment is not impermissibly vague, as it clearly restricts political activities on behalf of City candidates in City of Kenner elections.[173] Moreover, as discussed *supra*, the City argues that the term "political activity" is not vague, as it is defined in the Kenner City Charter and would not include casting votes or privately discussing who one may be voting for.[174]

A law or policy is void for vagueness if it "either forbids or requires the doing of an act in terms so vague that people of common intelligence must necessarily guess at its meaning and differ as to its application."[175] The Fifth Circuit has held that, because the First Amendment needs "breathing space," laws regulating speech "must be drawn with some specificity."[176] The government must ensure prohibitions are "clearly defined" and should "articulate its aims with a

---

[172] Rec. Doc. 50-1 at 13.

[173] Rec. Doc. 51 at 11–13.

[174] *Id.* at 13.

[175] *Connally v. Gen. Const. Co.*, 269 U.S. 385, 391 (1926); *see also Roberts v. U.S. Jaycees*, 468 U.S. 609, 629 (1984) (applying the same test); *Allen v. Bartholomew Cty. Court Servs. Dep't*, 185 F. Supp. 3d 1075, 1080–81 (S.D. Ind. 2016) (applying the same void for vagueness test in a First Amendment challenge to a policy prohibiting court employees from engaging in political activity).

[176] *Serv. Employees Int'l Union, Local 5*, 595 F.3d at 596 (citing *Howard Gault Co. v. Tex. Rural Legal Aid, Inc.*, 848 F.2d 544, 559 (5th Cir. 1988)).

reasonable degree of clarity."[177] While a law may be written to be flexible, it must provide "fair notice" so that "its prohibitions may be avoided by those who wish to do so."[178] According to the Fifth Circuit, the purpose of the vagueness doctrine is to prevent the government "from chilling substantial amounts of speech and facilitating discriminatory and arbitrary enforcement."[179] That is, the vagueness doctrine addresses laws where citizens cannot predict which actions are prohibited and where "discriminatory and arbitrary enforcement" is possible.[180] Thus, to succeed on their vagueness challenge, Plaintiffs must show that the Charter Amendment: (1) reaches a substantial amount of constitutionally protected conduct; and (2) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or "authorizes or even encourages arbitrary and discriminatory enforcement."[181]

In *Hobbs v. Thompson*, the Fifth Circuit held that a provision in a city charter that prohibited fire department employees from taking an active part in any election, contributing money to any candidate, or "prominently identifying themselves in a political race with or against any candidate for office" was unconstitutionally vague.[182] The Fifth Circuit noted that it was unclear where the regulation stopped or if it prohibited displaying bumper stickers, discussing candidates with friends, or writing letters to newspapers in support of candidates.[183] The Fifth

---

[177] *Roberts*, 468 U.S. at 629; *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

[178] *Id.* at 596–97 (citing *Grayned v. City of Rockford*, 408 U.S. 104, 110–12 (1972)).

[179] *Asgeirsson v. Abbott*, 696 F.3d 454, 466 (5th Cir. 2012).

[180] *Id.*

[181] *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 761 (5th Cir. 2010); *see United States v. Clark*, 582 F.3d 607, 612 (5th Cir. 2009).

[182] 448 F.2d 456, 471 (5th Cir. 1971).

[183] *Id.*

Circuit further concluded that it was "simply inconceivable to us that one acting in good faith under this regulatory scheme would readily know what conduct was prohibited and what conduct was permitted," and therefore the provision would likely chill the plaintiffs' speech.[184]

The Charter Amendment plainly reaches a "substantial amount of constitutionally protected conduct," *e.g.*, Plaintiffs' political speech.[185] Moreover, as explained *supra*, the Charter Amendment fails to define what conduct or speech constitutes "political activity," rendering it both unconstitutionally vague and overly broad. Unlike the regulations on public employees' political activities upheld by the Supreme Court and the Fifth Circuit,[186] the Charter Amendment does not "clearly define" its terms or explicitly identify what speech or conduct is allegedly included or excluded in its broad ban.[187] The Charter Amendment does not incorporate the definition of "political activity" found at Section 8.04(B)(2) of the Kenner City Charter, leaving Plaintiffs to guess as to the definition and creating a serious risk of "discriminatory and arbitrary enforcement" depending on the definition adopted by a given enforcer.[188] If the City itself cannot point to a definitive authority to interpret and define the boundaries of the Charter Amendment's intrusions into Plaintiffs' political speech and activity, then it appears to also be true that "[people] of common intelligence must necessarily guess at its meaning."[189]

---

[184] *Id.*

[185] *See Clark*, 582 F.3d at 612; *see also Allen*, 185 F. Supp. 3d at 1080–81 (finding that a policy prohibiting *all* political activity by public employees clearly reaches a "substantial amount of constitutionality protected conduct").

[186] *See Letter Carriers*, 413 U.S. at 556; *Wachsman v. City of Dallas*, 704 F.2d 160, 162 (5th Cir. 1983).

[187] *Roberts*, 468 U.S. at 629; *Grayned*, 408 U.S. at 108.

[188] *Asgeirsson*, 696 F.3d at 466.

[189] *Connally v. Gen. Const. Co.*, 269 U.S. 385, 391 (1926).

As such, Plaintiffs have shown that the Charter Amendment risks chilling substantial amounts of their protected speech.[190] For example, Plaintiffs point out that the Charter Amendment is vague as to whether a City employee can attend her private civic organization's meetings when a mayoral candidate is invited to speak,[191] or how a spouses' private political activity in a shared home can be distinguished from the City employee.[192] Indeed, the fact that the City argues that the Charter Amendment excludes voting in elections and private political conversations from its prohibitions on *any* political activity, an exclusion that is not found anywhere in the text of the Charter Amendment, exacerbates the ambiguity as to what conduct is now prohibited. The chilling effect of the Charter Amendment and the possibility of arbitrary enforcement of its provisions are further increased by the fact that Plaintiffs are unclassified civil servants who lack the same job protections that classified civil servants receive.[193]

---

[190] *See, e.g.*, Rec. Doc. 4-1 at 11 (Plaintiff Mary-Sharon Howland, who is an officer in several private civic organizations, asserting that it is unclear what the Charter Amendment would prohibit her from doing if a mayoral candidate attended or spoke at one of those organizations' meetings, *e.g.*, it is unclear if she would be precluded from attending the meeting with mayoral candidates or clapping during a candidate's speech).

[191] *See* Rec. Doc. 4-1 at 11 (asserting that it is unclear if Plaintiff Howland would be precluded from attending a meeting for her civic organization when mayoral candidates are speaking or whether she may clap during a candidate's speech); Rec. Doc. 4-5 at 1–2.

[192] *See* Rec. Doc. 4-1 at 12 (Plaintiffs arguing that the Charter Amendment is vague as to whether its prohibitions would apply if a City employee drives a family car with a political bumper sticker on it placed by a family member or if a spouse made a campaign contribution to a City candidate); Rec. Doc. 4-4 at 2 (Plaintiff Stephen Petit stating in his Declaration that he features a window sticker on his vehicle supporting a current Kenner City Councilman in an upcoming election for Jefferson Parish Council). Moreover, at the preliminary injunction hearing, the City also could not clarify whether the Charter Amendment prohibits a Plaintiff from attending a fundraiser for a City candidate hosted by his or her spouse in their private home, or at what point a private conversation about City candidates between a Plaintiff and a single individual or small group would cross the line from permissible to impermissible under the Charter Amendment. *See* Prelim. Inj. Tr., July 5, 2017, at 30:4–30:23 (the Court asking if an employee could tell stand up at a spouse's dinner party and tell others who he or she is voting for, and the City responding that it depends on whether the person is "actively campaigning" at the dinner party or not).

[193] *See* Rec. Doc. 4-5 at 2; *see also* Rec. Doc. 4-4 at 2; Rec. Doc. 1 at 10.

Therefore, based on the foregoing, the Court concludes that Plaintiffs have shown that the Charter Amendment's wide prohibitions and undefined terms are so vague that people of common intelligence must necessarily guess at its meaning and differ as to its application.[194] Accordingly, the Court finds that there is no genuine issue of material fact and Plaintiffs are entitled to judgment as a matter of law that the Charter Amendment is unconstitutionally vague.

### 3.  Whether the Charter Amendment is Overbroad

Plaintiffs also contend that the Charter Amendment is overbroad.[195] Plaintiffs argue that it has no "legitimate sweep," as there is no basis for the City to enforce content-based regulations on all political activity related to City elections.[196] In opposition, the City argues that "the Fifth Circuit continues to follow the Supreme Court's decisions in *Letter Carriers* and *Broadrick*, limiting political activities of public employees in a manner similar to that provided in Section 1.06 of the City of Kenner's Charter."[197]

As the Fifth Circuit has noted, for a law to be overbroad, it must "reach[ ] a substantial amount of constitutionally protected conduct."[198] According to the Fifth Circuit, a government's legitimate purpose to validly control or prevent some expressive conduct cannot be accomplished "by means which sweep unnecessarily broadly and thereby invade the area of protected

---

[194] *Connally v. Gen. Const. Co.*, 269 U.S. 385, 391 (1926); *see also Roberts v. U.S. Jaycees*, 468 U.S. 609, 629 (1984) (applying the same test); *Allen v. Bartholomew Cty. Court Servs. Dep't*, 185 F. Supp. 3d 1075, 1080–81 (S.D. Ind. 2016) (applying the same void for vagueness test in a First Amendment challenge to a policy prohibiting court employees from engaging in political activity).

[195] Rec. Doc. 50 at 16–17.

[196] *Id.*

[197] Rec. Doc. 51 at 13–14 (citing *Phillips v. City of Dallas*, 781 F.3d 772, 782 (5th Cir. 2015)).

[198] *Asgeirsson*, 696 F.3d at 464–65.

freedoms."[199]  "Facial overbreadth scrutiny emphasizes the need to eliminate an overbroad law's deterrent impact on constitutionally protected expressive activity."[200]

In *Hobbs v. Thompson*, the Fifth Circuit held that a city charter provision prohibiting fire department employees from taking an active part in any election, contributing money to any candidate, or "prominently identifying themselves in a political race with or against any candidate for office" was overbroad.[201] The Fifth Circuit determined that the city's prohibitions "sweep too broadly and proscribe a great deal of political activity which is unrelated to the effective workings of the fire department" or the "proper performance of its firemen's employment duties."[202] The Fifth Circuit opined that the "very fact that the scheme has been construed to forbid political bumper stickers—a particularly innocuous form of political activity—points out clearly the broadside nature of the Macon prohibitory regulations."[203] The Fifth Circuit in *Hobbs* further cited approvingly to the California Supreme Court's decision in *Fort v. Civil Service Commission of Alameda County*, where the court invalidated a county charter provision that prohibited public employees from taking part in a political campaign or an election except to vote or privately express an opinion.[204] The California Supreme Court in *Fort* concluded that the First Amendment does not permit "wholesale restrictions on political activities merely because the persons affected

---

[199] *Hobbs v. Thompson*, 448 F.2d 456, 459–60 (5th Cir. 1971); *see also Serv. Employees Int'l Union, Local 5 v. City of Houston*, 595 F.3d 588, 598 (5th Cir. 2010).

[200] *Hobbs*, 448 F.2d at 459–60.

[201] *Id.* at 474.

[202] *Id.* at 471.

[203] *Id.*

[204] *Id.* (citing *Fort v. Civil Serv. Comm'n of Alameda Cty.*, 61 Cal. 2d 331, 333 (1964)). The Fifth Circuit further noted with approval the holdings of state courts in *City of Miami v. Sterbenz* and *De Stefano v. Wilson* enjoining overbroad restrictions on public employees' political rights. *Id.* (citing *City of Miami v. Sterbenz*, 203 So. 2d 4, 5 (Fla. 1967); *De Stefano v. Wilson*, 96 N.J. Super. 592, 597, 233 A.2d 682, 685 (Law. Div. 1967)).

are public employees," and because the county charter provision "encompassed both valid and invalid restrictions on free speech," it was overbroad.[205]

The Charter Amendment plainly reaches a "substantial amount of constitutionally protected conduct," *e.g.*, Plaintiffs' political speech.[206] While the City points out that limited restrictions on public employees' political activities have been upheld in other cases, the Charter Amendment "sweep[s] too broadly" by going well beyond targeted restrictions on political activities and including a substantial amount of protected political expression that is either unrelated to or attenuated from the City's goals and the Plaintiffs' employment duties.[207] Indeed, unlike the laws challenged in *Hobbs* and *Fort*, the Charter Amendment fails to even exclude voting or privately expressing an opinion from its overbroad reach. Accordingly, the Court finds that there is no genuine issue of material fact and Plaintiffs are entitled to judgment as a matter of law on their claim that the Charter Amendment is unconstitutionally overbroad.

**B.      *Whether Plaintiffs are Entitled to a Permanent Injunction***

Plaintiffs seek a permanent injunction barring the enforcement of the Charter Amendment.[208] In opposition, the City essentially only argues that Plaintiffs are not entitled to a permanent injunction because the Charter Amendment is not unconstitutional.[209] As noted above,

---

[205] *Fort*, 61 Cal. 2d at 338–39.

[206] *See Clark*, 582 F.3d at 612; *see also Allen*, 185 F. Supp. 3d at 1080–81 (finding that a policy prohibiting *all* political activity by public employees clearly reaches a "substantial amount of constitutionality protected conduct").

[207] *Hobbs*, 448 F.2d at 460, 471 (holding that even if "the interests a statute promotes may justify some infringement upon First Amendment rights, the overbreadth doctrine condemns those means to that legitimate end which comprehend too broad an incursion upon the realm of First Amendment activity").

[208] Rec. Doc. 50-1 at 19–22.

[209] Rec. Doc. 51 at 15–18.

"[t]he party seeking a permanent injunction must satisfy a four-part test: it must show (1) success on the merits; (2) the failure to grant the injunction will result in irreparable injury; (3) the injury outweighs any damage that the injunction will cause the opposing party; and (4) the injunction will not disserve the public interest."[210] For the reasons previously discussed, Plaintiffs succeed on the merits of their claims insofar as the Charter Amendment violates the First Amendment because it is not narrowly tailored, and is unconstitutionally vague and overbroad and there are no material facts in dispute on these issues. Therefore, Plaintiffs meet the first element necessary to obtain a permanent injunction.

As for the second element, the Supreme Court has opined that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."[211] In *Opulent Life Church v. City of Holly Springs, Mississippi*, the Fifth Circuit determined that a church challenging a ban on using a public courthouse square had satisfied the irreparable harm requirement because it had alleged violations of its First Amendment rights.[212] Here, the Charter Amendment precludes the exercise of Plaintiffs First Amendment freedoms and chills their protected speech. Therefore, the failure to grant the injunction will result in irreparable injury.

As to the third element, in *Opulent Life Church*, the Fifth Circuit noted that, after concluding that the plaintiff's harm to its religious liberties rights under the First Amendment was irreparable, the defendant "would need to present powerful evidence of harm to its interests to

---

[210] *United Motorcoach Assoc.*, 851 F.3d 489, 492–93 (citing *VRC LLC*, 460 F.3d at 611).

[211] *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

[212] 697 F.3d 279, 295 (5th Cir. 2012).

prevent [the plaintiff] from meeting this requirement.”[213] The City presents no evidence of a harm to its interests to prevent Plaintiffs from meeting this requirement. Therefore, the Court finds that the injury to Plaintiffs outweighs any damage that the injunction will cause the City.

Finally, as to the fourth element, in *Opulent Life Church*, the Fifth Circuit held that “injunctions protecting First Amendment freedoms are always in the public interest.”[214] Therefore, the Court finds that granting a permanent injunction here will not do disservice to the public interest. Accordingly, Plaintiffs have established all four requirements for a permanent injunction banning enforcement of the Charter Amendment.

### C.     *Whether Plaintiffs are Entitled to Nominal Damages and Attorneys' Fees*

Plaintiffs contend that they are entitled to at least nominal damages based on the violation of their constitutional rights.[215] Plaintiffs also assert they are entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988.[216] In response, the City argues that Plaintiffs should not prevail on these requests because the Charter Amendment is not unconstitutional.[217]

“The law is well-established in this Circuit that plaintiffs may recover nominal damages when their constitutional rights have been violated but they are unable to prove actual injury.”[218] In *Williams v. Kaufman County*, the Fifth Circuit approved an award of $100 as nominal

---

[213] 697 F.3d at 297 (ultimately remanding the case to the district court to allow the defendant to put on evidence as to the third prong, as the district court had denied the motion for a preliminary injunction on the second prong).

[214] 697 F.3d at 298. *See also Ingebretsen v. Jackson Public School District*, 88 F.3d 274, 280 (5th Cir. 1996) (determining that because the “School Prayer Statute” challenged in that case was unconstitutional, “the public interest was not disserved by an injunction preventing its implementation”).

[215] Rec. Doc. 50-1 at 22 (citing *Williams v. Kaufman Cnty.*, 352 F.3d 994, 1014 (5th Cir. 2003)).

[216] *Id.* at 23.

[217] Rec. Doc. 51 at 18.

[218] *Williams*, 352 F.3d at 1014.

damages.[219] Accordingly, the Court concludes that $100 is an appropriate nominal damages award in this matter.

Pursuant to 42 U.S.C. § 1988(b), the Court, in its discretion, may allow a prevailing part in any action brought under Section 1983 "a reasonable attorney's fee as party of the costs." Plaintiffs have prevailed on their Section 1983 claims regarding the constitutionality of the Charter Amendment. Accordingly, the Court, in its discretion, finds that Plaintiffs are entitled to reasonable attorney's fees and costs.

## V. Conclusion

For the reasons stated above, the Court concludes that there are no genuine issues of material fact and Plaintiffs are entitled to judgment as a matter of law declaring that the Charter Amendment violates their First Amendment rights to engage in political speech, is unconstitutionally vague, and is overbroad. Plaintiffs have also carried their burden on all four factors identified by the Fifth Circuit to prevail on a request for a permanent injunction. Therefore, the Court hereby grants Plaintiffs' motion for summary judgment and enjoins Defendants and their agents from enforcing Kenner City Charter Article I, Section 1.06. The Court also concludes that Plaintiffs are entitled to nominal damages in the amount of $100, reasonable attorneys' fees and costs. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' "Motion for Summary Judgment"[220] is **GRANTED** and that Defendants and their agents are enjoined from enforcing Kenner City Charter Article I, Section 1.06.

---

[219] *Id.*

[220] Rec. Doc. 50.

38

**IT IS FURTHER ORDERED** that Defendants shall pay Plaintiffs the sum of ONE HUNDRED DOLLARS ($100), plus attorneys' fees and costs.

**IT IS FURTHER ORDERED** that on or before April 20, 2018, Plaintiffs are to file a specific request for attorneys' fees and costs consistent with this Circuit's precedent on prevailing hourly rates, etc.[221]

**NEW ORLEANS, LOUISIANA**, this <u>19th</u> day of March, 2018.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[221] *See Portillo v. Cunningham*, 872 F.3d 728, 741–42 (5th Cir. 2008) (citing *Combs v. City of Huntington, Tex.*, 829 F.3d 388, 391 (5th Cir. 2016)).